UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PRISONERS' LEGAL SERVICES OF NEW YORK,<br><br>ROBERT F. KENNEDY HUMAN RIGHTS,<br><br>NEW YORK CIVIL LIBERTIES UNION,<br><br>            Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>KRISTI NOEM<br>    in her official capacity as Secretary,<br>    U.S. Department of Homeland Security,<br><br>JOSEPH E. FREDEN,<br>    in his official capacity as Deputy Field Office Director,<br>    Buffalo Federal Detention Facility,<br><br>THOMAS BROPHY,<br>    in his official capacity as ICE Enforcement and<br>    Removal Operations Buffalo Field Office Director,<br><br>            Defendants. | No. 25 Civ. _____<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

Plaintiffs Prisoners' Legal Services of New York ("PLSNY"), Robert F. Kennedy Human Rights ("RFK Human Rights"), the New York Civil Liberties Union (the "NYCLU," and together, the "Organizations" or "Plaintiffs") bring this complaint for declaratory and injunctive relief against the United States Department of Homeland Security ("DHS") and United States Immigration and Customs Enforcement ("ICE"), and DHS Secretary Kristi Noem, Buffalo Federal Detention Facility Deputy Field Office Director Joseph E. Freden, and ICE Enforcement

1

and Removal Operations Buffalo Field Office Director Thomas Brophy in their official capacities (together, the "Defendants"), and allege as follows:

## INTRODUCTION

1. The Organizations — three nonprofits who provide *pro bono* legal services — bring this challenge to the unlawful legal mail policy at the Buffalo Federal Detention Facility ("BFDF") that provides for the inspecting, copying, and retaining of legal mail sent to and by individuals detained at BFDF.

2. On November 13, 2023, Defendants enacted a purportedly "emergency" legal mail policy by which officers working at BFDF ("ICE officers") inspect, copy, and retain all legal mail sent to or from BFDF, including protected confidential communications between attorneys and their clients. ICE officials retain custody and control of the original legal mail without providing it to detained individuals, and instead provide them only with a copy. Though Defendants assert the policy was implemented to address unspecified safety and security concerns, the policy applies categorically to all incoming and outgoing legal mail at BFDF and ignores less burdensome alternatives.

3. In or around March 2024, Defendants temporarily lifted this policy, but in November 2024 they re-instituted the policy and expanded its scope to provide for the inspection, copying, and retention of all legal documents transmitted to individuals detained at BFDF *by any means*, including documents given in-person by attorneys meeting with clients at BFDF.

4. As a result of this policy, the Organizations and others that provide legal services are unable to transmit privileged and confidential documents to individuals detained at BFDF without ICE officers inspecting, copying, and retaining those documents. The Organizations'

clients are further prohibited from accessing the original documents sent to or provided by counsel.

5. This policy violates the First Amendment right of the Organizations to speak freely through privileged and confidential communications with their clients detained at BFDF. And it strikes at the bedrock of the attorney-client relationship by disrupting the open and effective exchange of information and advice between legal counsel and their clients.

6. Defendants' policy thereby imposes an unconstitutional chilling effect on the First Amendment rights of the Organizations and their clients to privileged and confidential legal communications.

7. Further, Defendants' policy deviates from ICE's own national standards for the protection of the legal mail of detained individuals, thereby violating the Administrative Procedure Act ("APA"). Under the APA, such a policy is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law, and should therefore be held unlawful and set aside. 5 U.S.C. § 706(2)(A).

## PARTIES

8. Plaintiff Prisoners' Legal Services of New York is a nonprofit legal service provider that maintains offices in Buffalo, Newburgh, Ithaca, and Albany, New York. PLSNY's Immigration Unit is a provider within the New York Immigrant Family Unity Project, which obligates PLSNY to provide *pro bono* legal representation to immigrants incarcerated and detained throughout New York, including at BFDF. PLSNY attorneys currently represent individuals detained at BFDF, including in removal proceedings before the Executive Office of Immigration Review ("EOIR") and the U.S. circuit courts, as well as in federal actions before the U.S. district and circuit courts. PLSNY attorneys transmit privileged and confidential legal mail

to clients at BFDF and rely upon communication by legal mail to provide effective representation to their clients.

9. Plaintiff Robert F. Kennedy Human Rights is a non-partisan, not-for-profit organization that maintains offices in New York City and Washington, District of Columbia. RFK Human Rights advocates for human rights and civil rights issues in the criminal legal and immigration systems through litigation and advocacy on behalf of detained people, including *pro bono* representation of individuals detained at BFDF. RFK Human Rights represents such individuals in federal actions before the U.S. district and circuit courts, as well as before EOIR and oversight agencies of ICE including, but not limited to, the Office of Civil Rights and Civil Liberties and the Office of the Inspector General. RFK Human Rights attorneys transmit privileged and confidential legal mail to clients at BFDF and rely upon communication by legal mail to provide effective representation to their clients.

10. Plaintiff the New York Civil Liberties Union is the New York State affiliate of the American Civil Liberties Union. The NYCLU is a not-for-profit corporation incorporated in New York State and with its main office in New York City and approximately 85,000 members and supporters dedicated to the constitutional principles of liberty and equality. The NYCLU defends the civil rights and civil liberties of all New Yorkers, including noncitizens, people in immigration detention, and people detained at BFDF, in civil rights class actions and individual challenges in federal court. The NYCLU attorneys transmit privileged and confidential legal mail to clients at BFDF and rely upon communication by legal mail to provide effective representation to their clients.

11. Defendant U.S. Department of Homeland Security is the federal agency that oversees the national immigration detention system. It is responsible for dictating policies in use at immigration detention facilities, such as BFDF.

12. Defendant U.S. Immigration and Customs Enforcement is the DHS sub-agency that operates BFDF. It is responsible for carrying out the policies of the DHS.

13. Defendant Kristi Noem is the Secretary of the DHS. She is responsible for directing the policies of the DHS. She is sued in her official capacity.

14. Defendant Joseph E. Freden is the Deputy Field Office Director of BFDF. He is responsible for deciding and implementing operational procedures at BFDF. He is sued in his official capacity.

15. Defendant Thomas Brophy is the ICE Enforcement and Removal Operations Buffalo Field Office Director. He is the local ICE official responsible for individuals detained in his custody at BFDF. He is sued in his official capacity.

**JURISDICTION AND VENUE**

1. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1361. This action arises under the First Amendment of the United States Constitution and the Administrative Procedure Act, 5 U.S.C. §§ 701-06. The Organizations' requests for a declaratory judgment and for injunctive relief are authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02; the APA, 5 U.S.C. §§ 701-06; and 28 U.S.C. § 1361.

2. Defendants' actions constitute final agency action that presents an actual controversy ripe for judicial review.

3. Venue is proper under 28 U.S.C. § 1391(b), (e).

# BACKGROUND

A. **ICE Agency Guidelines Provide for the Treatment of Special Correspondence and Legal Mail as Privileged and Confidential.**

4.  ICE has established the *Performance-Based National Detention Standards 2011* (rev. 2016) (the "ICE Standards" or "PBNDS") to, *inter alia*, "increase access to legal services."[1] The ICE Standards provide standards that ICE is required to uphold at certain federal immigration detention facilities throughout the country, including BFDF.

5.  Chapter 5.1 of the ICE Standards contains provisions concerning the processing of incoming and outgoing special correspondence and legal mail "to ensure that it is treated as privileged mail." PBNDS § 5.1(V)(C)(4) 359 (ICE 2016). Special correspondence and legal mail is defined broadly to include any mail received from or sent to:

   a. private attorneys and other legal representatives;
   b. government attorneys;
   c. judges and courts;
   d. embassies and consulates;
   e. the president and vice president of the United States;
   f. members of Congress;
   g. the Department of Justice (including the DOJ Office of the Inspector General);
   h. the Department of Homeland Security (including U.S. Immigration and Customs Enforcement, ICE Health Services Corps, the Office of Enforcement and Removal Operations, the DHS Office for Civil Rights and Civil Liberties, and the DHS Office of the Inspector General);
   i. outside health care professionals;
   j. administrators of grievance systems; and
   k. representatives of the news media.

PBNDS § 5.1(V)(F)(2) at 360.

---

[1] Available at: https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf (last accessed Mar. 6, 2025).

6. Mail to or from any of these persons or entities is treated as legal mail so long as the title and office of the person or entity is clearly identified on the envelope and the envelope is labelled as "special correspondence" or "legal mail." *Id.*

7. In general, all incoming correspondence must be delivered to a detained person within 24 hours of receipt by the facility, and outgoing correspondence must be delivered to the postal service no more than one day after receipt by the ICE facility. PBNDS § 5.1(V)(D) at 359.

8. In the event that the status of an addressee or sender of special correspondence or legal mail must be verified for "exception[al] . . . security purposes," the ICE Standards limit the period of retention of such correspondence to 48 hours. PBNDS § 5.1(V)(D)(3) at 359.

9. The ICE Standards provide no other exception to a facility's obligation to deliver incoming or outgoing mail within 24 hours of receipt and provide no exception — including no security exception – whereby a facility may hold mail for more than 48 hours.

10. In the event that a facility seeks to inspect correspondence for contraband, the ICE Standards state that the facility "shall implement procedures for inspecting for contraband, in the presence of the detainee, all special correspondence or legal mail." PBNDS § 5.1(V)(F)(2) at 360.[2]

11. The ICE Standards make clear that "staff shall neither read nor copy special correspondence or legal mail," even in the case of an inspection. PBNDS § 5.1(V)(F)(2) at 360. The ICE Standards further state that "outgoing special correspondence or legal mail shall not be opened, inspected or read." PBNDS § 5.1(V)(C)(5) at 359.

---

[2] BFDF has implemented this PBNDS directive through the *Buffalo Federal Detention Facility Handbook* (2016) ("BFDF Handbook").

12. The ICE Standards require that facilities provide similar access to legal materials transmitted by an attorney or legal assistant during in-person visits. The standards state that ICE facilities "must provide for the exchange of documents between a detainee and the legal representative." PBNDS § 5.7(V)(J)(10) at 400. The standards are clear that "[d]etainees are entitled to retain legal material received for their personal use" and such materials "shall be inspected but not read." *Id.*

### B. In November 2023, BFDF Revised its Legal Mail Policy to Copy and Retain Legal Mail.

13. On November 13, 2023, Defendants implemented changes to BFDF's legal mail policy that deviate from the special correspondence and legal mail policy under the ICE Standards. This revised policy memorandum provides, *inter alia*, that:

> All "Special Correspondence," including "Legal Mail," will be opened in front of the non-citizen in the Processing Unit. Copies will be made in front of the non-citizen by the designated officer and given to them. The original documents will be sealed in the original envelope and placed into the non-citizen's property bin.

This policy places no time limit on BFDF's retention of special correspondence and legal mail.

14. BFDF's policy of copying and retaining special correspondence and legal mail contradicts the requirements of the ICE Standards. PBNDS § 5.1(V) at 360.

15. Under BFDF's revised legal mail policy, outgoing mail is collected by an ICE officer when visiting a unit at BFDF. Though BFDF's memorandum states that BFDF's revised policy of inspecting, copying, and retaining originals applies to *all* special correspondence and legal mail, detained individuals are present only for the making of any copies of their incoming legal mail. The Organizations and their clients detained at BFDF do not know how ICE officers apply BFDF's revised policy to their outgoing legal mail.

16. For incoming mail, ICE officers conduct inspections of legal mail by first calling an entire unit of detained individuals to BFDF's mail processing area. Once the unit is called, an ICE officer calls a group of detained individuals, up to fifteen at a time, into the mail processing room. The ICE officer then opens and reviews the legal mail of each detained individual one-by-one while the other detained individuals wait in the same processing room.

17. Once an incoming package is opened, the ICE officer removes the contents and inspects them. Detained individuals are not allowed to handle or touch the contents of their legal mail, and are permitted only a cursory glance at the materials held in front of them, but cannot meaningfully review the materials' contents.

18. Once the officer is satisfied with inspection of the incoming legal mail, the officer brings the documents to a copy machine located in the processing area.

19. The officer then makes a copy and gives the copy to the detained individual. Detained individuals are then instructed to sign a logbook that identifies each person who has received a copy of their legal mail. After a detained person has signed the logbook, the ICE officer places the original legal mail back inside the package it came in, after which the officer puts the package on an open table and moves on to the next person's mail. In one instance, an ICE officer closed an original package with a piece of scotch tape and asked PLSNY's detained client to initial the tape. In all other instances in which that client received legal mail, the inspecting ICE officer did not tape the original package or ask PLSNY's detained client to initial the package.

20. In over a dozen instances observed by PLSNY's detained client, ICE officers have read an individual's legal mail while copying the mail.

21. For incoming mail, ICE officers have informed detained individuals that their original legal mail is brought to and placed into the individuals' property bins, which are under the sole custody and control of Defendants. Pursuant to the BFDF Handbook, detained individuals are "not allowed access to [their] personal property after the time of initial admission until [they] leave the facility." Detained individuals do not observe the placement of their legal mail in their property bins, and cannot ensure that their legal mail has actually been placed in their property bins. Detained individuals do not have general access to their property bins and do not know who has access to the bins outside of their presence.

22. In one instance, PLSNY's detained client asked that an inspecting ICE officer take him to his property bin so that he could see that his legal mail would be placed there. The officer took the detained individual to his property bin, but did not allow the individual to see the actual placement of legal mail in the property bin.

23. BFDF's revised policy places no time limit on BFDF's retention of legal mail.

24. Defendants have provided no legitimate justification for deviating from the ICE Standards on the processing of legal mail. On November 10, 2023, BFDF Assistant Field Officer Director Peter Sukmanowski provided only the unsubstantiated assertion that the change was allegedly made "for the health and well-being, and safety and security, of the facility, the detainees, and employees" in light of "actionable intelligence and prior health-related activities involving detainees and staff members due to contraband being introduced into the facility through general correspondence, items marked as legal mail, and items marked as special correspondence."

25. Mr. Sukmanowski did not identify the "actionable intelligence" or "prior health related activities" that purportedly motivated the agency's change in policy. The ICE Standards

already provide established standards for inspecting and retaining legal mail for 48 hours, and Mr. Sukmanowski did not explain how additional requirements of copying and indefinitely retaining detained individuals' mail outside their presence addressed ICE's purported concerns. Nor did Mr. Sukmanowski explain how any such health risks could relate to outgoing mail sent *from* BFDF, or why ICE could not adopt a policy more narrowly tailored to the legal correspondence of individuals who allegedly introduced contraband to BFDF.

26. In or around March 2024, BFDF temporarily suspended its revised legal mail policy. During this temporary suspension, ICE officers still called units down to the processing room for the processing of incoming mail, but they did not open, inspect, copy, or retain originals of legal mail. Instead, ICE officers ran the unopened legal mail through a drug scanner and, after the mail was scanned, allowed detained individuals to keep the unopened originals.

### C. In Late 2024, BFDF Reinstituted and Expanded its Policy of Copying and Retaining Legal Mail.

27. On November 27, 2024, BFDF ceased use of its drug scanner and reinstituted its November 2023 policy of inspecting legal mail, making copies, and retaining the originals.

28. BFDF further expanded this policy to any legal documents provided by a legal representative to a detained person, including documents that a legal representative provided to a detained client during a visit to BFDF or in court. The expanded policy provides that:

> Any documents provided by a legal representative to a noncitizen during a visit or in court must be placed in a sealed envelope and given to the contract officer to be delivered to the Processing Unit, where it will be treated as "Special Correspondence" or "Legal Mail."

29. Under the expanded policy, ICE officers confiscate legal documents during in-person meetings by asking the visiting legal representative to put the legal documents in an envelope. The ICE officer leaves the visitation room with the envelope to make copies in another wing of the BFDF facility. ICE officers can take five to ten minutes to return with

11

copies, and neither detained individuals nor their legal representatives are allowed to follow the ICE officer, observe the officer making copies, or otherwise see how the ICE officer handles the documents after the officer leaves the visitation room.

30. As with incoming and outgoing legal mail, this policy places no time limit on BFDF's retention of documents brought by legal representatives to in-person meetings.

31. Upon information and belief, BFDF has continued to impose this new policy as of the filing of this complaint.

### D. Defendants' Policy Interferes with the Organizations' Provision of Legal Services.

32. From November 2023 to around March 2024, and again since November 2024, Defendants' legal mail policy has interfered with the ability of the Organizations to communicate freely and effectively with their clients.

33. To represent their clients, the Organizations' attorneys and case handlers rely upon confidential written legal communication with their clients, including documents transmitted by mail, in-person at BFDF, and in-person at court.

34. Confidentiality is fundamental to the relationship between an attorney and client and to the effective provision of legal services.

35. The Organizations are responsible under the New York Rules of Professional Conduct to secure their clients' confidential information under Rule 1.6(c), to engage in active communications with their clients under Rule 1.4, and to provide competent representation under Rule 1.1.

36. Defendants' legal mail policy undermines the confidentiality of the Organizations' legal communications with their clients by mail. These policies also interfere

with the in-person meetings held between the Organizations and their clients by inhibiting the Organizations' ability to provide their clients with legal documents.

37. The Organizations and their clients do not trust that the confidentiality of their written communications is secure under Defendants' new legal mail policy, and the Organization's clients detained at BFDF have asked that their lawyers and case handlers refrain from using written communications out of fear that such confidential communications may be viewed by ICE officers. The Organizations have honored these requests, and have refrained from sending confidential communications by mail or transmitting confidential documents when visiting clients at BFDF in-person.

38. Defendants' policy has interfered with the Organizations' provision of *pro bono* legal services to individuals detained at BFDF, causing significant and irreparable harm to the Organizations.

## CLAIM FOR RELIEF

### Count 1: Violation of the First Amendment

39. The above paragraphs are incorporated by reference.

40. The First Amendment protects the Organizations' right to privileged and confidential communications with their detained clients.

41. When ICE officers inspect and copy privileged confidential legal mail, and retain legal mail outside of the presence of a detained individual, the Organizations and their BFDF-detained clients cannot ensure that ICE officers refrain from reading their legal mail.

42. Defendants' legal mail policy undermines the confidentiality of the Organizations' communications and has, without legitimate justification, chilled the Organizations' right to privileged and confidential communications with their BFDF-detained clients in violation of the First Amendment.

### Count 2: Violation of the Administrative Procedure Act

43. The above paragraphs are incorporated by reference.

44. The APA authorizes courts to hold unlawful and set aside agency action, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

45. ICE's mail policy deviates from ICE Standards and violates the First Amendment of the United States Constitution, and therefore violates the Administrative Procedure Act as an action that is arbitrary, capricious, and not otherwise in accordance with law.

### PRAYER FOR RELIEF

WHEREFORE, the Organizations respectfully request that this Court:

i. Declare Defendants' acts and omissions as complained of to be unlawful and in violation of the First Amendment of the United States Constitution;

ii. Declare Defendants' acts and omissions as complained of to be contrary to law, arbitrary, capricious, and/or an abuse of discretion under the APA;

iii. Enjoin Defendants from further implementation of its current legal mail policy;

iv. Set aside Defendants' actions complained of;

v. Award the Organizations' costs, interest, and attorneys' fees under 28 U.S.C. § 2412;

vi. Grant any other and further relief the Court deems just and proper; and

vii. Retain jurisdiction over this matter until Defendants demonstrate full compliance with the Court's order.

Respectfully submitted,

DATED: March 10, 2025

*/s/ Tyler Jankauskas*
Tyler Jankauskas
M. Kristin Mace
Jordan Joachim
Casandra Delgado*
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
tjankauskas@cov.com
kmace@cov.com
jjoachim@cov.com
cdelgado@cov.com
*pro hac vice forthcoming*

Kerry Battenfeld
Jillian Nowak
PRISONERS' LEGAL SERVICES OF
NEW YORK
41 State St., Ste. M112
Albany, NY 12207
(518) 445-6050
kbattenfeld@plsny.org
jnowak@plsny.org

Sarah T. Gillman
Sarah E. Decker
ROBERT F. KENNEDY HUMAN RIGHTS
88 Pine St., Ste. 801
New York, NY 10005
(646) 289-5593
gillman@rfkhumanrights.org
decker@rfkhumanrights.org

Amy Belsher
NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
125 Broad St., Fl. 19
New York, NY 10004
(212) 607-3300
abelsher@nyclu.org