UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PRISONERS' LEGAL SERVICES
OF NEW YORK, et al.,

                Plaintiffs,

v.

U.S. DEPARTMENT OF HOMELAND
SECURITY, et al.

                Defendants.

No. 25 Civ. 01965 (GHW) (VF)

**PLAINTIFFS' RESPONSE TO ORDER TO SHOW CAUSE**

Tyler Jankauskas
Jordan Joachim
Casandra Delgado
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
tjankauskas@cov.com

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND .............................................................................................................. 2

LEGAL STANDARD ....................................................................................................... 5

ARGUMENT ................................................................................................................... 5

I. The Organizations' Choice of Forum Is Entitled to Deference. .................................. 5

    A. The NYCLU and RFK Human Rights Are at Home in This District. ............. 6

    B. The First Amendment Rights of the NYCLU and RFK Human Rights Were Chilled in This District. ........................................................................ 8

II. The Remaining Factors Under § 1404 Weigh Against or Otherwise Do Not Justify Transfer. ......................................................................................................... 9

CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*, No. 1:21-CV-04343-GHW,
  2021 WL 3115125 (S.D.N.Y. July 20, 2021) .................................................................. 11

*Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48 (S.D.N.Y. 2022) ................................ 7

*Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*,
  474 F.Supp.2d. 474 (S.D.N.Y. 2007) .......................................................................... 12

*Aquila v. Fleetwood, R.V., Inc.*, No. 12-CV-3281 LDW GRB, 2014 WL 1379648
  (E.D.N.Y. Mar. 27, 2014) ......................................................................................... 13

*Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-cv-4459, 2019 WL 4727496
  (S.D.N.Y. Sept. 27, 2019) ........................................................................................ 11

*Dickerson v. Novartis Corp.*, 315 F.R.D. 18 (S.D.N.Y. 2016) ................................................. 8-10

*Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81 (S.D.N.Y. 1995) ..................... 5

*ESPN, Inc. v. Quiksilver, Inc.*, 581 F.Supp.2d 542 (S.D.N.Y. 2008) ........................................... 7

*Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181 (E.D.N.Y. 2003) .................................. 13

*Exxon Corp. v. FTC*, 588 F.2d 895 (3d Cir. 1978) .................................................................. 7

*Freeplay Music, LLC v. Thermaltake USA, Inc.*, No. 19-CV-1674,
  2019 WL 12375285 (S.D.N.Y. July 9, 2019) ............................................................... 12

*Fund for La's Future v. La Bd. of Ethics*, No. 14-CV-0368, 2014 WL 1514234
  (E.D. La. Apr. 16, 2014) ............................................................................................ 8

*Grant & Eisenhofer, P.A.*, No. (JMF), 2015 WL 5751252 (S.D.N.Y September
  30, 2015) ................................................................................................................. 6-7

*Kalman v. Cortes*, 646 F.Supp.2d 738 (E.D. Pa. 2009) ............................................................ 8

*Keitt v. N.Y. City*, 882 F.Supp.2d 412 (S.D.N.Y. 2011) ...................................................... 9, 11

*Kumar v. Opera Sols. OPCO, LLC*, No. 20-CV-6824, 2021 WL 4442832
  (S.D.N.Y. Sept. 28, 2021) .......................................................................................... 9

*Las Americas Immigrant Advoc. Ctr. v. Trump*, 475 F. Supp. 3d 1194 (D. Or.
  2020) ........................................................................................................................ 2

*Mattel, Inc. v. Procount Bus. Servs.*, No. 03-CV-7234, 2004 WL 502190
 (S.D.N.Y. Mar. 10, 2004) ................................................................................. 13

*Mazuma Holding Corp. v. Bethke*, 1 F.Supp.3d 6 (E.D.N.Y. 2014)................................7

*Michelli v. City of Hope*, No. 93-CV-7582, 1994 WL 410964 (S.D.N.Y. Aug. 4,
 1994) ..............................................................................................................12

*Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 16-CV-1361,
 2017 WL 1498058 (S.D.N.Y. Apr. 26, 2017)................................................10

*N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010) .......5

*Reeder v. Yamaha Motor Corp., U.S.A.*, No. 92 CIV. 5455 (PKL), 1992 WL 370414 (S.D.N.Y.
 Dec. 2, 1992).............................................................................................. 1, 2, 5

*Seagoing Unif. Corp. v. Texaco, Inc.*, 705 F.Supp. 918 (S.D.N.Y. 1989) ........................2

*Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336 (6th Cir. 2005) ................................6

*Tanyike v. United States*, 603 F.Supp.3d 572 (S.D. Oh. 2022).......................................12

*Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F.Supp.3d 366
 (W.D.N.Y. 2018) ..............................................................................................9

*Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F.Supp.3d 206 (S.D.N.Y. 2017)............6

**Statutes**

28 U.S.C. § 1391(b) ........................................................................................................6, 8

28 U.S.C. § 1391(e) ........................................................................................ 2, 6-9, 11, 13

28 U.S.C. § 1404............................................................................................................1, 5, 7

# PRELIMINARY STATEMENT

On March 10, 2025, Plaintiffs—the New York Civil Liberties Union (the "NYCLU"), Robert F. Kennedy Human Rights ("RFK Human Rights"), and Prisoners' Legal Services of New York ("PSLNY")—filed suit in this Court challenging Defendants' unlawful policy of inspecting, copying, and retaining privileged legal mail and hand-delivered documents from Plaintiffs (the "Organizations") to their BFDF-detained clients. Dkt. No. 1 ¶ 1 ("Complaint"). By chilling the Organizations' right to privileged and confidential communications with the Organizations' clients, Defendants' policy constitutes a violation of the First Amendment. Compl. ¶¶ 39-42. And because Defendants' policy arbitrarily and capriciously deviates from their own established standards for the treatment of such mail under ICE's *Performance-Based National Detention Standards 2011* (rev. 2016), Defendants' policy also constitutes a violation of the Administrative Procedure Act. *Id.* ¶¶ 4-12.

Under the Defendants' policy, the Organizations cannot and do not trust that their written communications to their clients will remain confidential and unread by adverse third parties, namely, the United States Immigration and Customs Enforcement ("ICE") and its officers, employees, and contractors (together, "ICE officers") who staff BFDF. Compl. ¶ 37. Because of this distrust, the Organizations have refrained from sending written communications to their clients. *Id.*

On March 11, 2025, this Court ordered Plaintiffs to show cause as to why this action should not be transferred to the Western District of New York. Dkt. No. 8 ("Order to Show Cause"). The presumption in favor of the Organizations' chosen forum holds under 28 U.S.C. § 1404 because the NYCLU and RFK Human Rights are at home in this District, where both the NYCLU and RFK Human Rights maintain principal offices at which their First Amendment rights were chilled by Defendants' policy. *See Reeder v. Yamaha Motor Corp., U.S.A.*, No. 92

CIV. 5455, 1992 WL 370414, at *4 (S.D.N.Y. Dec. 2, 1992) (strong deference is owed to a plaintiff's choice of forum where plaintiff is at home or where the cause of action arose.) (collecting cases).

As co-plaintiff to the NYCLU and RFK Human Rights, PLSNY is likewise entitled to file suit in this District under 28 U.S.C. § 1391(e). Section 1391(e) provides venue for the Organizations' action against the federal government and its officers where any one Plaintiff maintains residence, and PLSNY is entitled to that same venue as a co-plaintiff. *See, e.g.*, *Las Americas Immigrant Advoc. Ctr. v. Trump*, 475 F. Supp. 3d 1194, 1202 (D. Or. 2020) ("Where there are multiple plaintiffs, only one plaintiff must be a resident of the district to satisfy the residency requirement of venue under § 1391(e)(1)(C).").

The other factors considered under § 1404 either weigh against transfer or fail to require transfer, and thus fall short of weighing so "strongly in favor of [transfer]" by clear and convincing evidence so as to disturb the Organizations' choice of forum. *Reeder*, 1992 WL 370414, at *4 (citing *Seagoing Unif. Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 936 (S.D.N.Y. 1989)).

The Organizations accordingly and respectfully request that this case remain as-filed in the Southern District of New York.

## BACKGROUND

Defendants have enacted a policy requiring the inspection, copying, and retaining of confidential legal mail sent to and by individuals detained at BFDF, interfering with the Organizations' ability to communicate freely through privileged and confidential communications with their clients detained at BFDF, and thereby imposing an unconstitutional chilling effect on their First Amendment rights. Compl. ¶¶ 1-7. Further, the Organizations allege

that Defendants' policy deviates from ICE's own national standards for the protection of the legal mail of detained individuals, thereby violating the Administrative Procedure Act.  *Id.*

The Organizations are each nonprofit providers of *pro bono* legal services, including legal representation of individuals detained at BFDF.  Compl. ¶ 8.  Plaintiff the NYCLU is incorporated in New York State and maintains its main office in New York City.  Declaration of Amy Belsher ("Belsher Decl.") ¶ 3.  Plaintiff RFK Human Rights is incorporated in Washington D.C. and has two principal and co-equal offices, one in Manhattan and one in Washington D.C.  Declaration of Sarah Gillman ("Gillman Decl.") ¶¶ 3-4.  Plaintiff PSLNY is incorporated in New York State and maintains offices in Albany, Buffalo, Ithaca, and Newburgh.  Declaration of Jillian Nowak ("Nowak Decl.") ¶ 3.  Defendants are federal agencies and officers located in the District of Columbia (U.S. Department of Homeland Security, or "DHS"; U.S. Immigration and Customs Enforcement, or "ICE"; and Secretary of the DHS Kristi Noem) and the Western District of New York (Deputy Field Office Director of BFDF Joseph E. Freden; ICE Enforcement and Removal Operations Buffalo Field Office Director Thomas Brophy.  Compl. ¶¶ 11-15.

In November 2023, ICE headquarters in Washington D.C. authorized Defendants' legal mail policy by which ICE officers inspect, copy, and retain all legal mail sent to or from BFDF, including protected confidential communications between the Organizations and their clients.  Gillman Decl. Exhibit 1 ("[T]he BFDF has received a temporary waiver of section 5.1 of the PBNDS from ICE HQ to allow the photocopying of all mail and correspondence received at the BFDF."); Compl. ¶¶ 13-21.  Under Defendants' policy, ICE officers retain custody and control of the original legal mail and provide detained individuals with a copy.  Compl. ¶¶ 16-19, 21.  In or around March 2024, Defendants temporarily lifted this policy, but in November 2024, the policy

was re-instituted and expanded in scope to provide for the inspection, copying, and retention of all legal documents transmitted to detained individuals, including documents given in-person by attorneys. Compl. ¶¶ 26-31.

Through their unlawful policy, Defendants have disrupted the attorney-client relationship between all three of the Organizations and their clients, as neither the Organizations nor their clients trust that the confidentiality of their written communications will be maintained under the policy. "In the past, [RFK Human Rights] would send legal mail to BFDF from the RFK Pine Street office on a monthly or bi-weekly schedule. . . . [now they] can no longer communicate with [their] clients using legal mail." Gillman Decl. ¶ 10; *see also* Belsher Decl. ¶ 7 ("NYCLU does not trust that the privilege and confidentiality of its written legal communications with clients maintained at BFDF will be maintained"); Nowak Decl. ¶¶ 5-7 ("the PLSNY case handlers providing direct representation to people who are detained at BFDF have discontinued the use of legal mail to communicate with clients for privileged communications").

Defendants have thus chilled and continue to chill the Organizations' privileged and confidential legal communications to their clients. This chilling is happening within this District, where Plaintiffs the NYCLU and RFK Human Rights base representation of their clients detained at BFDF. Belsher Decl. ¶¶ 4-7; Gillman Decl. ¶¶ 6, 8-9. The Organizations have been forced to rely upon oral communications with their clients detained at BFDF. *See* Nowak Decl. ¶ 7 ("[E]ven during in-person visits, case handlers have opted to read documents to clients rather than hand over written documents to be copied and potentially read by ICE officers.").

The Organizations' reliance on in-person legal visits, caused by Defendants' unconstitutional policy, requires time-consuming and expensive travel which places a burden on the Organizations' already limited means as nonprofit organizations providing *pro bono* legal

services. Legal visits from the Manhattan-based NYCLU and RFK Human Rights attorneys, and from PLSNY immigration attorneys in Albany, require additional hours and days of travel. Two-day trips from New York are "a significant time and monetary burden imposed on the NYCLU for its legal representatives to travel to the Buffalo area and to the Western District of New York." Belsher Decl. ¶¶ 8-9; *see also* Gillman Decl. ¶ 11 ("[A] *de facto* requirement of travel to Batavia each and every time we need our BFDF clients to review confidential written legal materials creates a heavy burden on our limited time resources."); Nowak Decl. ¶¶ 7-9 ("travel to [BFDF from Albany] requires a full day of travel for a round-trip visit or an overnight stay"). Once at BFDF, an in-person visit can take hours for something as simple as a client signature. *See* Nowak Decl. ¶¶ 7-8.

This unjust burden imposes harm on the NYCLU and RFK Human Rights in this District, which the Organizations have properly chosen as the forum to resolve this matter.

## LEGAL STANDARD

Absent a clear and convincing showing that the balance of 28 U.S.C. § 1404 factors require a transfer of forum, a plaintiff's choice of forum should not be disturbed. *See N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010) ("the district courts in our Circuit have consistently applied the clear and convincing evidence standard in determining whether to exercise discretion to grant a transfer motion") (collecting cases).

## ARGUMENT

### I. The Organizations' Choice of Forum Is Entitled to Deference.

"As a general matter, [a] plaintiff's choice of forum is given significant weight and will not be disturbed, unless the balance of factors weigh strongly in favor of granting the transfer." *Reeder v. Yamaha Motor Corp., U.S.A.,* 1992 WL 370414, at *4 (citation omitted); *see also Eskofot A/S v. E.I. Du Pont De Nemours & Co.*, 872 F.Supp. 81, 96 (S.D.N.Y. 1995) (same).

The NYCLU and RFK Human Rights have filed suit in this District, where they are at home under § 1404 and where their rights under the First Amendment have been chilled by Defendants' policy. The NYCLU and RFK Human Rights have the right to venue in this District under 28 U.S.C. § 1391(e), on the basis of residency, and under 28 U.S.C. § 1391(b) because they suffered First Amendment chilling in this District. And PLSNY also has the right to file suit in this District under § 1391(e) as a co-plaintiff against the federal government. *See*, *e.g.*, *Sidney Coal Co. v. Soc. Sec. Admin.*, 427 F.3d 336, 344-45 (6th Cir. 2005) (requiring only one plaintiff to establish venue under § 1391(e) "is not only the majority view—it is the only view adopted by the federal courts since 1971."). Because of the deference owed to the Organizations' choice of forum, and because transferring only PLSNY's action would not serve the interests of judicial economy and justice under § 1404, the Organizations' action should remain in this district.

## A. The NYCLU and RFK Human Rights Are at Home in This District.

The NYCLU and RFK Human Rights both maintain principal places of business in Manhattan, where the two organizations suffered a violation of their First Amendment rights, and are thus at home in this District under § 1404.

First, the NYCLU is at home in this District because it is headquartered and maintains its principal place of business in Manhattan and is incorporated in New York state. Belsher Decl. ¶ 3; *cf., e.g.*, *Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F.Supp.3d 206, 215 (S.D.N.Y. 2017) (explaining that under § 1404(a), a corporate party is "at home" in the district "where it is incorporated, has its nerve center, and does business"). This alone requires strong deference to the NYCLU's choice of this District as the forum for this action.

Second, RFK Human Rights is likewise at home in this District under § 1404 because "one of its principal locations and the majority of [its] lawyers relevant to this dispute [are] located here." *Grant & Eisenhofer, P.A.*, No. 14-CV-9839, 2015 WL 5751252, at *7 (S.D.N.Y

6

September 30, 2015) (quotations omitted); *see also ESPN, Inc. v. Quiksilver, Inc.*, 581 F.Supp.2d 542, 551 (S.D.N.Y. 2008) (Southern District filing by a Connecticut plaintiff with a principal place of business in Connecticut was due "considerable weight" under § 1404 to a Southern District because "many of its operations, including those germane to [the] case . . . [were] carried out in New York City"). RFK Human Rights' operations are split between two co-equal offices: Manhattan, where its Chief Operating Officer and attorneys relevant to this action work and where its President maintains her in-person office, and one in Washington, D.C., where RFK Human Rights is incorporated. *See* Gillman Decl. ¶¶ 3-4. Defendants' unlawful chilling of RFK Human Rights' protected speech is felt in that Manhattan office, as this is where RFK Human Rights' representation of its BFDF clients originates and is directed from, as are RFK Human Rights' representations of BFDF-detained clients that it shares with partner legal organizations. *Id.* ¶¶ 6, 8-10; *cf. Mazuma Holding Corp. v. Bethke*, 1 F.Supp.3d 6, 29 (E.D.N.Y. 2014) (the choice of the Southern District by a Texas-incorporated plaintiff is owed "considerable weight" when "its participation in the events giving rise to this case occurred in" the Southern District).

Third, because PLSNY is co-plaintiff to other plaintiffs at home in this District, this District is a proper venue for PLSNY's action against federal Defendants under 28 U.S.C. § 1391(e). *Exxon Corp. v. FTC*, 588 F.2d 895, 898-99 (3d Cir. 1978)) ("[R]equiring every plaintiff in an action against the federal government . . . to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation . . . There is no requirement that all plaintiffs reside in the forum district."). The same applies under 28 U.S.C. § 1404, as holding otherwise would create unnecessary parallel litigation over the same subject matter and thereby create the very "waste of time, energy and money" that § 1404 is designed to prevent. *Albright v. Terraform Labs, Pte. Ltd.*, 641 F. Supp. 3d 48, 55 (S.D.N.Y. 2022); *see also id.* at 56

("if there exists a forum that is presently able to resolve the parties' dispute more quickly than another forum, the plaintiff's decision to choose that venue should be afforded very considerable weight.").

### B. The First Amendment Rights of the NYCLU and RFK Human Rights Were Chilled in This District.

The Organizations' choice of this District is also entitled considerable deference because the chilling effects suffered by the NYCLU and RFK Human Rights occurred in this forum. *Dickerson v. Novartis Corp.*, 315 F.R.D. 18, 32 (S.D.N.Y. 2016) ("Where 'the forum selected is . . . the place where the operative facts of the action occurred . . . a plaintiff's choice of forum is entitled to considerable weight.'" (quoting *McGraw-Hill Cos. Inc.*, 2014 WL 988607, at *7).

The NYCLU's and RFK Human Rights' claims under the First Amendment arises at the site of the harm in this District. "The suppression itself . . . is the most important event in the origin of [the] suit." *Kalman v. Cortes*, 646 F.Supp.2d 738, 742 (E.D. Pa. 2009) (a First Amendment plaintiff "suffers harm only where the speech would have taken place, as opposed to the district in which the statute was written and the decision to restrict this plaintiff's speech was made."); s*ee also Fund for La's Future v. La Bd. of Ethics*, No. 14-CV-0368, 2014 WL 1514234, at *12 (E.D. La. Apr. 16, 2014) ("Uniquely in the context of pre-enforcement self-censorship, the location of the plaintiff is relevant to the . . . inquiry" determining the location of events giving rise to venue under 28 U.S.C. § 1391(b)). The NYCLU's and RFK Human Rights' attorneys and case managers in Manhattan are unable to communicate with their BFDF-detained clients due to Defendants' policy on inspecting, copying, and retaining legal mail sent to and from Manhattan, and their cause of action thus arises in this District.

As to the site of PLSNY's claims, PLSNY has suffered harm in the Northern and Western Districts of New York. Nowak Decl. ¶ 7. Because "the locus of operative facts" as to PLSNY

"is split amongst several forums," this factor is neutral as to PLSNY's claims, and thereby does not justify a transfer that would displace the deference owed to the Organizations' choice of forum. *Kumar v. Opera Sols. OPCO, LLC*, No. 20-CV-6824, 2021 WL 4442832, at *16 (S.D.N.Y. Sept. 28, 2021) (quoting *Travelers Prop. Cas. Co. of Am. v. Ocean Reef Charters LLC*, 324 F.Supp.3d 366, 381 (W.D.N.Y. 2018)). The federal government is open to suit in any venue available under 28 U.S.C. § 1391(e) and, as described above, transfer of only PLSNY's claims would disrupt the judicial economy and interests of justice meant to be served by § 1404.

## II. The Remaining Factors Under § 1404 Weigh Against or Otherwise Do Not Justify Transfer.

Even if the Organizations were not at home in this District under § 1404, the other § 1404 factors weigh against transfer or are otherwise neutral, and thus fail to provide a clear and convincing justification for disturbing the Organizations' choice of forum.

Courts consider ten factors, including deference to the plaintiff's choice of forum, when considering whether transfer is appropriate: "(1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of the circumstances." *Keitt v. N.Y. City*, 882 F.Supp.2d 412, 459-60 (S.D.N.Y. 2011); *see also Dickerson*, 315 F.R.D. at 32.[1] Each of these factors is either weighs against or fails to support transferring this action.

---

[1] Factor 3 (locus of operative facts) and factor 8 (weight of the plaintiff's choice of forum) are discussed in Section I, above.

9

***This District is Convenient for the Most Significant Concentration of Witnesses.***

The NYCLU and RFK Human Rights suffered an unconstitutional chilling of their free speech rights in Manhattan, and thus the most significant concentration of potential witnesses in this case are located in this District. *See* Belsher Decl. ¶ 4; Gillman Decl. ¶ 6; *see also Multiwave Sensor Inc. v. Sunsight Instruments, LLC*, No. 16-CV-1361, 2017 WL 1498058, at *7 (S.D.N.Y. Apr. 26, 2017) ("The Court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum; but must rather qualitatively evaluate the materiality of the testimony that the witnesses may provide.") (quotation omitted). This District is also a convenient forum for PLSNY, as a significant portion of effected PLSNY employees work in Albany, and thus travel to a Southern District courthouse will be more convenient than travel to a Western District courthouse. Nowak Decl. ¶¶ 3, 9.

It is Defendants' burden to demonstrate their own witnesses would be inconvenienced by a case in this District, and such a showing is improbable. *Dickerson*, 315 F.R.D. at 27 (the party seeking transfer must "provide the Court with a detailed list of probable witnesses who will be inconvenienced if required to testify in the current forum"). The authorization of Defendants' unconstitutional policy was made in Washington D.C., and testimony from Defendants will likely come from federal officials and employees of the Department of Homeland Security and Immigration and Customs Enforcement, both headquartered in Washington, D.C. It is not likely that federal witnesses would be inconvenienced more by travel to this District than by travel to the Western District of New York. As to any Defendant witnesses located in Western District of New York, such witnesses are likely federal officials and employees who are on notice that their

conduct may be challenged in the home forum of those suffering from their unconstitutional conduct. *See* 28 U.S.C. § 1391(e).

***The Convenience of Two Defendants Does Not Outweigh the Convenience to Plaintiffs.***

"A mere shifting of inconveniences [between the parties] is not sufficient to transfer a case," and the Organizations' choice of forum reflects their judgment as to the most convenient forum for the Organizations. *1724982 Alberta ULC v. Park Ave. Wholesale, Inc.*, No. 1:21-CV-04343-GHW, 2021 WL 3115125, at *5 (S.D.N.Y. July 20, 2021) (quoting *Casper Sleep, Inc. v. Nectar Brand LLC*, No. 18-cv-4459, 2019 WL 4727496, at *6 (S.D.N.Y. Sept. 27, 2019). The residency of two federal defendants in the Western District of New York is not sufficient to shift any inconvenience on the Organizations, who have suffered violation of their constitutional rights and brought suit in this District on the basis of appropriate jurisdiction and venue over those defendants. Defendants are all federal officers and agencies, three out of five of whom are based in Washington D.C.—the Department of Homeland Security, Immigration and Customs Enforcement, and Secretary Kristi Noem—and will face no significant inconvenience from appearing in this District as compared to the Western District.

***The Availability of Process to Compel the Attendance of Any Unwilling Witnesses Does Not Suggest a Need to Transfer.***

There is "little, if any, difference, between the [Southern and Western District of New York] with respect to the availability of process to compel the attendance of unwilling witnesses" because the compulsory process is available throughout New York state. *Keitt v. N.Y. City*, 882 F. Supp. 2d at 459. This factor thereby cannot supply a clear and convincing showing of the need for a transfer.

11

***The Location of Relevant Documents and the Relative Ease of Access to Sources of Proof Does Not Suggest a Need to Transfer.***

"The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents," and thus cannot supply a clear and convincing showing of the need for a transfer. *Id.* (quoting *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*, 474 F.Supp.2d. 474, 484 (S.D.N.Y. 2007).

***The Federal Government Has Significant Means to Litigation in This District Relative to the Pro Bono Organizations.***

"[A] motion to transfer venue should not be granted when the result is merely to shift the inconvenience to the plaintiff," and there is no clear and convincing evidence that a transfer to Western District of New York would result in anything but a marginal benefit to two of the five federal defendants. *Michelli v. City of Hope*, No. 93-CV-7582, 1994 WL 410964, at *4 (S.D.N.Y. Aug. 4, 1994) (quotation omitted). This marginal benefit to the federal government would impose a disproportionate burden on the nonprofit Organizations, who have limited money and resources and whose attorneys and other employees are already burdened by monetary and time costs due to Defendants' unconstitutional policy. Gillman Decl. ¶¶ 11-13; Belsher Decl. ¶¶ 8-10. "[T]he Government . . . possesses a deep pool of resources and can wield the power of the federal government to its advantage," *Tanyike v. United States*, 603 F.Supp.3d 572, 584 (S.D. Oh. 2022), and decidedly does not "lack[] the means to litigate this case" in this District. *Freeplay Music, LLC v. Thermaltake USA, Inc.*, No. 19-CV-1674, 2019 WL 12375285, at *5 (S.D.N.Y. July 9, 2019). As a result, transfer to the Western District of New York "would, at best, simply shift inconvenience and cost from [the federal government] to [the Organizations] who [are] less able to bear such cost." *Michelli*, 1994 WL 410964, at *4.

*The Governing Law Does Not Suggest a Need to Transfer.*

Because this Court is familiar with the law governing Plaintiffs' First Amendment and APA claims, this factor is neutral and thus does not supply a clear and convincing basis in favor of transfer. *Mattel, Inc. v. Procount Bus. Servs.*, No. 03-CV-7234, 2004 WL 502190, at *4 (S.D.N.Y. Mar. 10, 2004) ("This case raises questions of federal law. Therefore, either forum is equally capable of hearing and deciding those questions.").

*An Action in this District Serves the Interests of Judicial Economy and of Justice.*

"There are no special features in this action that would cause the interest of justice to be better served if it was in" the Western District of New York, "or that would make the trial more or less efficient in that forum. *Excelsior Designs, Inc. v. Sheres*, 291 F. Supp. 2d 181, 188 (E.D.N.Y. 2003). And, because "[t]he public-interest factors weigh against the bisecting of what is essentially a single controversy," the deference owed to the NYCLU and RFK Human rights to bring this action at home in this District should be extended to PLSNY as their co-litigant. *Aquila v. Fleetwood, R.V., Inc.*, No. 12-CV-3281, 2014 WL 1379648, at *4 (E.D.N.Y. Mar. 27, 2014). It would serve neither efficiency nor justice to deny PLSNY access to this District as appropriate under 28 U.S.C. § 1391(e).

## CONCLUSION

The Organizations respectfully request that their choice of forum remain intact, and that this action not be transferred to the Western District of New York.

DATED:  April 4, 2025                                Respectfully Submitted,

                                                          */s/ Tyler Jankauskas*
                                                       Tyler Jankauskas

| | |
|---|---|
| Sarah T. Gillman | Tyler Jankauskas |
| Sarah E. Decker | Jordan Joachim |
| ROBERT F. KENNEDY HUMAN RIGHTS | Casandra Delgado |
| 88 Pine St., Ste. 801 | COVINGTON & BURLING LLP |
| New York, NY 10005 | 620 Eighth Avenue |
| (646) 289-5593 | New York, New York 10018-1405 |
| gillman@rfkhumanrights.org | (212) 841-1000 |
| decker@rfkhumanrights.org | tjankauskas@cov.com |
| | jjoachim@cov.com |
| | cdelgado@cov.com |
| | |
| Kerry Battenfeld | Amy Belsher |
| Jillian Nowak | NEW YORK CIVIL LIBERTIES UNION |
| PRISONERS' LEGAL SERVICES OF NEW YORK | 125 Broad St., Fl. 19 |
| 41 State St., Ste. M112 | New York, NY 10004 |
| Albany, NY 12207 | (212) 607-3300 |
| kbattenfeld@plsny.org | abelsher@nyclu.org |
| jnowak@plsny.org | |

## Certificate of Compliance

I certify that, excluding the caption, table of contents, table of authorities, signature block, and this certification, the foregoing Memorandum of Law contains 4,071 words, calculated using Microsoft Word, which complies with Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York.

Dated: New York, New York
April 4, 2025

    /s/ Tyler Jankauskas

Tyler Jankauskas
COVINGTON & BURLING LLP
620 Eighth Avenue
New York, New York 10018-1405
(212) 841-1000
tjankauskas@cov.com