**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

PRISONERS' LEGAL SERVICES OF NEW YORK,
*et al.*,

                Plaintiffs,

        v.

U.S. DEPARTMENT OF HOMELAND SECURITY,
*et al.*,

              Defendants.

25 Civ. 1965 (GHW) (VF)

 

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

JAY CLAYTON
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2761

CHRISTOPHER K. CONNOLLY
Assistant United States Attorney
   – Of Counsel –

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................2

    I.    The BFDF Mail Policy.....................................................................................2

    II.    Plaintiffs' Complaint and Motion for a Preliminary Injunction ............................6

ARGUMENT ............................................................................................................7

    I.    The Court Should Refrain from Resolving Plaintiffs' Preliminary Injunction
        Motion and Grant Defendants' Motion to Transfer This Case to the Western
        District of New York ........................................................................................7

    II.    In the Alternative, the Court Should Deny Plaintiffs' Motion for a
        Preliminary Injunction ....................................................................................8

        A.    Plaintiffs Cannot Meet Their High Burden for Obtaining
               Preliminary Relief.................................................................................8

        B.    Plaintiffs' Delay in Seeking Injunctive Relief Underscores the Lack
               of Irreparable Harm..............................................................................10

        C.    Plaintiffs Do Not Establish a Clear or Substantial Likelihood of
               Success on the Merits............................................................................13

        D.    Plaintiffs Do Not Make a Clear Showing That Injunctive Relief
               Is in the Public Interest .........................................................................16

CONCLUSION.......................................................................................................18

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(s)**

*Baldwin Hardware Corp. v. Harden Industries, Inc.*,
    663 F. Supp. 82 (S.D.N.Y. 1987) ....................................................................... 7

*Bionpharma Inc. v. CoreRx, Inc.*,
    582 F. Supp. 3d 167 (S.D.N.Y. 2022) ............................................................. 17

*Bray v. Mazza*,
    CIVIL ACTION NO. 4:21-CV-00119-JHM, 2022 WL 17836601
    (W.D. Ky. Dec. 21, 2022) .......................................................................... 15, 16

*Cerussi v. Union College*,
    144 F. Supp. 2d 265 (S.D.N.Y. 2001) ............................................................... 8

*Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*,
    364 F. Supp. 3d 253 (S.D.N.Y. 2019) ............................................................... 9

*Citibank, N.A. v. Citytrust*,
    756 F.2d 273 (2d Cir. 1985) .............................................................................11

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) ......................................................................................... 14

*City of Newburgh v. Sarna*,
    690 F. Supp. 2d 136 (S.D.N.Y. 2010) ..............................................................11

*Corley v. United States*,
    11 F.4th 79 (2d Cir. 2021) ................................................................................. 8

*Costello v. McEnerny*,
    767 F. Supp. 72 (S.D.N.Y. 1991) ................................................................... 13

*Council for Responsible Nutrition v. James*,
    No. 24 Civ. 1881 (ALC), 2024 WL 1700036 (S.D.N.Y. Apr. 19, 2024)......................... 12

*Damone v. Teamsters Local 804*,
    18-CV-4059 (LDH) (ST), 2018 WL 7821134 (E.D.N.Y. Oct. 30, 2018)..........................11

*Davis v. Goord*,
    320 F.3d 346 (2d Cir. 2003) ........................................................................... 16

*Davis v. Pension Benefit Guarantee Corp.*,
    571 F.3d 1288 (D.C. Cir. 2009)....................................................................... 17

*Deide v. Day*,
676 F. Supp. 3d 196 (S.D.N.Y. 2023) ................................................................ 17

*Dish Network, L.L.C. v. American Broad. Cos. (In re AutoHop Litig.)*,
No. 12 Civ. 4155, 2013 WL 5477495 (S.D.N.Y. Oct. 1, 2013) ........................ 12

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
559 F.3d 110 (2d Cir. 2009) .............................................................................. 10

*Gordon v. State Farm Fire & Casualty Co.*,
No. 24 Civ. 8392 (GHW), 2025 WL 1079096 (S.D.N.Y. Apr. 10, 2025) ........... 8

*Grand River Enterprises Six Nations, Ltd. v. Pryor*,
481 F.3d 60 (2d Cir. 2007) ..................................................................... 8, 10, 11

*A.H. by & through Hester v. French*,
985 F.3d 165 (2d Cir. 2021) ........................................................................ 9, 10

*Insurance Co. of the State of Pa. v. Lakeshore Toltest JV, LLC*,
No. 15 Civ. 1436 (ALC), 2015 WL 8488579 (S.D.N.Y. Nov. 30, 2015) ........... 12

*Kakar v. USCIS*,
29 F.4th 129 (2d Cir. 2022) ........................................................................ 13, 15

*Levine v. Bradshaw*,
No. 22-80321-CIV, 2023 WL 11885182 (S.D. Fla. July 6, 2023) ..................... 16

*Lyon v. Cornell Univ.*,
No. 97 Civ. 7070 (JGK), 1998 WL 226193 (S.D.N.Y. May 4, 1998) .................. 7

*Majorica, S.A. v. R.H. Macy & Co., Inc.*,
762 F.2d 7 (2d Cir. 1985) .................................................................................. 11

*Million Youth March, Inc. v. Safir*,
18 F. Supp. 2d 334 (S.D.N.Y. 1998) .................................................................. 13

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .............................................................................................. 14

*Monowise Limited Corp. v. Ozy Media, Inc.*,
No. 17 Civ. 8028 (JMF), 2018 WL 2089342 (S.D.N.Y. May 3, 2018) .............. 11

*Natural Resources Defense Council v. EPA*,
658 F.3d 200 (2d Cir. 2011) .............................................................................. 14

*Nken v. Holder*,
  556 U.S. 418 (2009)..................................................................................... 16

*Sallier v. Brooks*,
  343 F.3d 868 (6th Cir. 2003) ...................................................................... 15

*Shady v. Tyson*,
  5 F. Supp. 2d 102 (E.D.N.Y. 1998) ............................................................ 13

*Strebe v. Kanode*,
  No. 7:17-cv-00321, 2018 WL 4473117 (W.D. Va. Sept. 18, 2018) ............... 16

*Students for Fair Admissions v. U.S. Military Academy at West Point*,
  709 F. Supp. 3d 118 (S.D.N.Y. 2024) .......................................................... 8

*T–Mobile Ne. LLC v. Water Authority of W. Nassau County*,
  249 F. Supp. 3d 680 (E.D.N.Y. 2017) ......................................................... 12

*Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*,
  60 F.3d 27 (2d Cir. 1995)........................................................................ 9, 13

*Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*,
  454 F. Supp. 2d 62 (E.D.N.Y. 2006) ........................................................... 12

*Winter v. Natural Resources Defense Council, Inc.*,
  555 U.S. 7 (2008)............................................................................ 8, 10, 16

*Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC*,
  80 F. Supp. 2d 25 (S.D.N.Y. 1995) ............................................................. 12

*Yang v. Kosinski*,
  960 F.3d 119 (2d Cir. 2020) ......................................................................... 9

## STATUTES

5 U.S.C. § 706(2)(A)........................................................................................ 13

28 U.S.C. § 1404(a) .......................................................................................... 8

<u>**PRELIMINARY STATEMENT**</u>

Defendants the U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); Kristi Noem, in her official capacity as Secretary of DHS; Joseph E. Freden, in his official capacity as Deputy Field Office Director, Buffalo Federal Detention Facility; and Stephen Kurzdorfer, in his official capacity as Acting ICE Enforcement and Removal Operations Buffalo Field Office Director,[1] by their attorney, Jay Clayton, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in opposition to plaintiffs' motion for a preliminary injunction.

Plaintiffs—legal services organizations who represent individuals who are detained at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York—seek an order enjoining a mail policy that was implemented at BFDF in its current form in November 2024, and that was originally implemented in a slightly different form in November 2023. The policy, which provides for the opening and copying of all incoming legal mail by BFDF staff in front of the individuals to whom it is addressed—but prohibits BFDF staff from reading that mail—was implemented in response to evidence that drugs and synthetic substances were entering BFDF through the legal mail, which endangered the health and safety of both detained individuals and BFDF staff. Plaintiffs claim that the policy violates the Administrative Procedure Act ("APA") by failing to comport with ICE's Performance-Based National Detention Standards ("PBNDS"), and that it also chills their First Amendment free speech rights.

The Court should, first, decline to adjudicate plaintiffs' motion and instead grant defendants' pending motion to transfer this case to the U.S. District Court for the Western District

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Stephen Kurzdorfer is automatically substituted for former ICE Enforcement and Removal Operations Buffalo Field Office Director Thomas Brophy as a defendant in this action.

of New York. Plaintiffs' motion—which rests entirely on alleged conduct at BFDF and relies, in large part, on two declarations from potential witnesses located in the Western District—underscores that the Western District is the proper venue for this case. Accordingly, a court in that District should adjudicate the issues raised by the instant motion.

If the Court elects to decide plaintiffs' motion, it should be denied. Under any circumstances, a preliminary injunction is an extraordinary remedy, and plaintiffs must make a clear showing that they are entitled to such relief. That standard is heightened even further where, as here, plaintiffs ask the Court to command a positive act: in this case, termination of a mail policy that has been in effect at BFDF, in various forms, for the better part of the last eighteen months. Indeed, under any standard, plaintiffs' long delay in seeking injunctive relief undermines their claim that they will be irreparably harmed absent an injunction. That alone is sufficient to defeat their motion, but plaintiffs also cannot show a clear or substantial likelihood of success on the merits: BFDF has a reasoned basis for implementing the mail policy notwithstanding the PBNDS's mail provisions; the policy does not allow for the reading of legal mail; courts have upheld the constitutionality of similar mail policies; and plaintiffs have not identified any specific instances in which a detainee's legal mail was read. Finally, plaintiffs cannot establish that the balance of equities and public interest favor injunctive relief in light of the health and safety concerns animating the BFDF policy. For all these reasons, plaintiffs' motion should be denied.

## BACKGROUND

### I. The BFDF Mail Policy

BFDF is an ICE-owned Service Processing Center located in Batavia, New York. Declaration of George P. Harvey Jr., dated June 10, 2025 ("Harvey Decl.") ¶ 5. It is run by the ICE Enforcement and Removal Operations ("ERO") Buffalo Field Office, which "is responsible

for targeted interior enforcement of U.S. immigration laws within all 48 counties within the Buffalo Area of Responsibility (AOR)." *Id.*

In November 2023, BFDF was faced with "an emergency situation regarding drugs and synthetic substances being sent to the detained population via the U.S. mail service, involving mail marked as legal mail and non-legal mail." *Id.* ¶ 8. "ERO Buffalo Officers determined through investigative means that detainees were receiving envelopes and papers in the mail that were soaked or sprayed with drugs and/or synthetic substances." *Id.* This resulted in hospitalizations of detained individuals, suspected overdoses, and complaints from BFDF staff concerning the "unsafe work environment" created by the contraband. *Id.* In response to this situation, on November 13, 2023, ERO Buffalo leadership implemented a temporary policy pursuant to which "all special correspondence, including legal mail, was required to be opened and photocopied in front of the detainee to whom it was addressed, and the originals were to be sealed in the original envelope and placed into the detainee's property bin." *Id.* ¶¶ 9, 10 & Ex. A.

BFDF, like all ICE-owned detention facilities, is subject to the 2011 ICE Performance-Based National Detention Standards with 2016 Revisions (the "PBNDS"). *See id.* ¶¶ 7, 11. In general, the PBNDS provides for the treatment of legal mail as "privileged." *See* PBNDS § 5.1(V)(C)(4); Plaintiffs Mem. of Law in Support of Mot. for Prelim. Injunction (ECF No. 36) ("Pls.' PI Br.") 3-4. However, PBNDS § 5.1(V)(F)(2) also provides that "[a]ll facilities shall implement procedures for inspecting for contraband, in the presence of the detainee, all special correspondence or legal mail." Harvey Decl. ¶ 11. Pursuant to this provision, "[d]etainees shall sign a logbook upon receipt of special correspondence and/or legal mail to verify that the special correspondence or legal mail was opened in their presence." *Id.* Inspections "shall be limited to the purposes of detecting physical contraband and confirming that any enclosures qualify as special

correspondence or legal mail." *Id.* Moreover, the provision specifies that "[s]taff shall neither read nor copy special correspondence or legal mail." *Id.* In light of these provisions, on November 15, 2023, ICE ERO Headquarters approved a 90-day waiver of these PBNDS provisions "to allow the opening and photocopying of all legal mail and special correspondence received at the BFDF and placing the originals in the detainee's property." *Id.* ¶ 12 & Ex. B.

An updated memorandum reflecting the policy was provided to BFDF staff on November 15, 2023. *Id.* ¶ 13 & Ex. C. Under the November 2023 policy, in addition to opening all legal correspondence in front of the detainee to whom it belonged and providing the detainee with a copy of the mail, *see id.* ¶ 13, the original legal correspondence would be placed in the detainee's property bin, which would then be resealed, with the new seal documented, *see id.* ¶ 14. Further, the November 2023 policy generally was not applied to outgoing legal mail. *Id.* ¶ 15.

Following the implementation of the policy, BFDF detected "a decrease in drug and synthetic substance related incidents." *Id.* ¶ 17. In January 2024, ICE ERO Headquarters approved a further 90-day extension of the PBNDS waiver. *See id.* ¶ 18 & Ex. D.

In February 2024, BFDF received an electronic device, similar to an x-ray machine, that can be used to scan for drugs and synthetic substances. *Id.* ¶ 19. Relevant staff involved in processing detainee mail—typically contractors employed by Akima Global Services, LLC ("AGS"), *see id.* ¶ 13 n.1—were trained on the use of the scanner, and beginning in March 2024, staff began transitioning to use of the mail scanner in place of the policy implemented in November 2023, *id.* ¶ 20.

In May 2024, ICE ERO Headquarters approved a waiver for BFDF permitting the opening and photocopying of legal mail for an indefinite period of time, though the memorandum also acknowledged BFDF's receipt of the scanner. *Id.* ¶ 21. That same month, ERO Buffalo updated

BFDF Policy 5.4.1 to reflect that AGS staff "were required to utilize the scanning device to scan legal mail and special correspondence to detect if it contained any foreign substance." *Id.* ¶ 22. The updated policy explained that, to the extent correspondence was required to be opened and separated into smaller quantities for the scanner to work properly (if an envelope contained more than 25 pages), this would be done in front of the detainee. *See id.* If a foreign substance was detected, mail would also be opened and copied in the detainee's presence, and then placed in his property bin consistent with the policy implemented in November 2023. *See id.*

BFDF experienced another increase in drug-related incidents in or around November 2024. *Id.* ¶ 23. Through investigation, ERO Buffalo Officers determined "that drugs or synthetic substances had entered the detained population through documents exchanged during court." *Id.*

Consequently, on November 27, 2024, ERO Buffalo implemented a new policy concerning detainee visitation. *Id.* ¶ 24 & Ex. G. The policy provides "that if a legal representative provides documents to a detainee during a visit or in court, the documents must be placed in a sealed envelope and given to AGS staff to be delivered to the Processing Unit, where the documents will be processed as legal mail or special correspondence." *Id.* ¶ 24. The policy prohibits BFDF staff from reading such correspondence. *Id.* Further, at or around the same time, ERO Buffalo re-implemented the November 2023 policy providing for the inspection, opening, and copying of legal mail in front of detainees, and storage of original correspondence in the detainee's property bin. *Id.* Because ICE ERO Headquarters had already provided the necessary waiver, ERO Buffalo was able to implement these policy changes on its own in order to "ensure a safe and secure detention environment for BFDF staff and detainees that is free from drugs and dangerous substances." *Id.* The new policy went into effect on or about December 2, 2024. *Id.*

The policies implemented in November 2024 remain in place as of the date of this brief, and AGS staff also continue to use the scanning device. *Id.* ¶ 25. However, these policies "are not necessarily permanent"; "ERO Buffalo continually evaluates the safety and security of the BFDF and will modify its policies and procedures as circumstances warrant." *Id.* ¶ 26.

## II.     Plaintiffs' Complaint and Motion for a Preliminary Injunction

Plaintiffs commenced this action on March 10, 2025—nearly four months after implementation of the current version of the mail policy at BFDF. *See generally* Compl. (ECF No. 1). They allege that the policy violates their First Amendment right to privileged and confidential communications with their clients at BFDF, *see id.* ¶¶ 39-42, and also that the policy should be set aside under the APA because it does not comply with the PBNDS's provisions concerning legal mail, *see id.* ¶¶ 43-45.

Months later, on May 27, 2025, plaintiffs filed the instant motion for preliminary relief. *See* Notice of Motion (ECF No. 34). They seek an order enjoining defendants "from reading, copying, or retaining for more than 48 hours (including retention in a detained person's property bin) any incoming or outgoing confidential legal documents, including both legal documents transmitted by mail or in-person, to or from persons detained in the Buffalo Federal Detention Facility." Proposed Order (ECF No. 35) 2. Neither the complaint nor plaintiffs' submissions in support of their motion for a preliminary injunction alleges any specific incident in which BFDF staff read or otherwise improperly handled a detainee's legal mail. For the reasons discussed below, plaintiffs are not entitled to this belated preliminary relief.

# ARGUMENT

**I.**     **The Court Should Refrain from Resolving Plaintiffs' Preliminary Injunction Motion and Grant Defendants' Motion to Transfer This Case to the Western District of New York**

At the threshold, the Court should decline to resolve plaintiffs' motion and instead grant defendants' pending motion to transfer this case to the U.S. District Court for the Western District of New York. "[D]oing so [will] allow the transferee court to decide important issues that are critical to the disposition of the case." *Lyon v. Cornell Univ.*, No. 97 Civ. 7070 (JGK), 1998 WL 226193, *2 (S.D.N.Y. May 4, 1998) (citing cases). Put another way, "[i]t is preferable for the transferee court, before whom the action will be ultimately determined, to [decide the motion]." *Baldwin Hardware Corp. v. Harden Industries, Inc.*, 663 F. Supp. 82, 85-86 (S.D.N.Y. 1987) (granting motion to transfer and declining to adjudicate preliminary injunction motion).

As explained in defendants' briefs in support of transfer, the relevant factors—most notably the locus of operative facts and convenience of both party and non-party witnesses—support transferring this matter to the Western District. *See* Defs.' Transfer Br. (ECF No. 31) 5-16; Defs.' Transfer Reply Br. (ECF No. 33) 1-9. Plaintiffs' application for injunctive relief underscores that the Western District is the proper venue for this case. Like their complaint, plaintiffs' preliminary injunction brief relies on factual allegations concerning the operation of the mail policy at BFDF. Pls.' PI Br. 5-9; *see also* Order to Show Cause (ECF No. 8) 2 ("This entire case . . . arises from alleged conduct at the Buffalo Federal Detention Facility . . . which lies in the Western District of New York."). Plaintiffs rely on declarations from the managing attorney of PLSNY's Buffalo office, *see* Declaration of Jillian Nowak, dated May 23, 2025 (ECF No. 38), and an individual who is detained at BFDF, *see* Declaration of Osvaldo Hodge Valdez, dated Feb. 21, 2025 (ECF No. 39). In opposing the motion, defendants also rely on a declaration from a potential witness located in

the Western District who attests to conduct at BFDF: George P. Harvey Jr., an Assistant Field Office Director ("AFOD") in ICE ERO Buffalo's Batavia, New York sub-office who is "currently responsible for the day-to-day operations of the BFDF." *See* Harvey Decl. ¶¶ 1, 6; *see also* Background, *supra*. By contrast, none of the "operative facts" in this case "arose in the Southern District of New York." *Gordon v. State Farm Fire & Casualty Co.*, No. 24 Civ. 8392 (GHW), 2025 WL 1079096, at *4 (S.D.N.Y. Apr. 10, 2025) (Woods, J.) (quotation marks omitted).

This Court has "broad discretion" to transfer this case under 28 U.S.C. § 1404(a). *Corley v. United States*, 11 F.4th 79, 89 (2d Cir. 2021). It should exercise that discretion, transfer the case to the Western District, and refrain from deciding plaintiffs' motion in the interim. *See Cerussi v. Union College*, 144 F. Supp. 2d 265, 271 (S.D.N.Y. 2001) ("Having [granted defendants' motion to transfer], this Court will not resolve plaintiff's motion for a preliminary injunction.").

## II. In the Alternative, the Court Should Deny Plaintiffs' Motion for a Preliminary Injunction

If the Court elects to adjudicate this motion prior to resolving the venue issue, it should hold that plaintiffs are not entitled to preliminary injunctive relief and deny the motion.

### A. Plaintiffs Cannot Meet Their High Burden for Obtaining Preliminary Relief

Plaintiffs cannot satisfy the high standard for obtaining injunctive relief in this posture. "A preliminary injunction 'is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Students for Fair Admissions v. U.S. Military Academy at West Point*, 709 F. Supp. 3d 118, 129 (S.D.N.Y. 2024) (quoting *Grand River Enterprises Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007)); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). To demonstrate entitlement to this extraordinary and drastic remedy, a movant must clearly demonstrate: "(1) irreparable harm

8

absent injunctive relief, (2) a likelihood of success on the merits, [] (3) public interest weighing in favor of granting the injunction," and (4) "that the balance of equities tips in his or her favor." *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (quotation marks and footnotes omitted).

That standard is heightened even further in the current posture. Where, as here, the movant seeks "to modify the status quo by virtue of a 'mandatory preliminary injunction' (as opposed to seeking a 'prohibitory preliminary injunction' to maintain the status quo)," the "standard for obtaining preliminary injunctive relief is higher." *Id.* (quoting *Yang v. Kosinski*, 960 F.3d 119, 127 (2d Cir. 2020)). "In this circumstance, the movant must . . . make a *strong* showing of irreparable harm and demonstrate a *clear or substantial* likelihood of success on the merits." *Id.* (emphasis added; quotation marks omitted); *accord Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) ("[A] mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." (quotation marks omitted)).

Plaintiffs' application for injunctive relief should be held to a heightened standard because granting it would require BFDF to cease following a mail policy that has been in effect for the better part of eighteen months. *See* Harvey Decl. ¶¶ 8-25. In other words, BFDF has not "recently disturbed the status quo" by implementing the policy. *Christa McAuliffe Intermediate School PTO, Inc. v. de Blasio*, 364 F. Supp. 3d 253, 275 (S.D.N.Y. 2019). Rather, for the most part, the mail policy has been the status quo at BFDF since late 2023, and the policy in its current iteration (which, among other things, re-implements the November 2023 policy's procedures concerning inspecting, opening, copying, and storing legal mail) has been in place for nearly seven months,

since November 2024.  *See* Harvey Decl. ¶¶ 24-26.  Plaintiffs' repeated reference to the mail policy as "new," *see, e.g.*, Pls.' PI Br. 1, is factually inaccurate.

Because plaintiffs seek to alter, rather than maintain, the status quo, their application should be held to the heightened standard.  *See A.H. by & through Hester*, 985 F.3d at 177 ("the proposed injunction's effect on the status quo drives the standard").  But even if the Court were to characterize plaintiffs' preliminary injunction as prohibitory and apply the ordinary standard, plaintiffs still cannot make the "clear" showing necessary to obtain the "extraordinary and drastic remedy" they seek.  *Grand River Enterprises Six Nations*, 481 F.3d at 66.

## B. Plaintiffs' Delay in Seeking Injunctive Relief Underscores the Lack of Irreparable Harm

To begin, under either standard, plaintiffs are not entitled to injunctive relief because they cannot demonstrate irreparable harm.  As plaintiffs acknowledge, "'[a] showing of irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction.'"  Pls.' PI Br. 22 (quoting *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009)).  "To satisfy the irreparable harm requirement, [plaintiffs] must demonstrate that absent a preliminary injunction they will suffer an injury that is neither remote nor speculative, but actual and imminent."  *Grand River Enterprises Six Nations*, 481 F.3d at 66; *see also Winter*, 555 U.S. at 375 ("plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction" (emphasis in original)).  And failure to demonstrate irreparable harm is, in and of itself, grounds for denying a preliminary injunction motion: "the moving party must first demonstrate that such injury is likely before the other requirements for the issuance of an injunction will be considered."  *Grand River Enterprises Six Nations*, 481 F.3d at 66.

Here, plaintiffs' own lengthy delay in seeking injunctive relief is a sufficient basis for the Court to deny their motion.  "Preliminary injunctions are generally granted under the theory that

there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights, however, tends to indicate at least a reduced need for such drastic, speedy action." *Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276 (2d Cir. 1985). Accordingly, "[l]ack of diligence, standing alone, may . . . preclude the granting of preliminary injunctive relief, because it goes primarily to the issue of irreparable harm." *Majorica, S.A. v. R.H. Macy & Co., Inc.*, 762 F.2d 7, 8 (2d Cir. 1985).

Plaintiffs did not commence this lawsuit until March 2025—more than three months after the current iteration of BFDF's mail policy was implemented—and waited nearly an additional three months, until late May 2025, before seeking injunctive relief. In other words, although plaintiffs now insist that the current iteration of BFDF's mail policy causes them irreparable harm necessitating "an extraordinary and drastic remedy," *Grand River Enterprises Six Nations*, 481 F.3d at 66, they delayed for approximately six months before seeking that remedy. And that is the most conservative calculation of plaintiffs' delay; as plaintiffs admit in their complaint, *see* Compl. ¶¶ 13-25, and as the Harvey Declaration explains, *see* Harvey Decl. ¶¶ 8-18, BFDF first implemented a policy involving the opening, copying, and storage of detainee legal mail in November 2023, over eighteen months before plaintiffs filed the instant motion.

"Plaintiff[s'] delay seriously undermines [their] attempt to convey any sort of urgency; it indicates the lack of a truly immediate threat of irreparable harm, and weighs against granting preliminary relief." *City of Newburgh v. Sarna*, 690 F. Supp. 2d 136, 173 (S.D.N.Y. 2010). Indeed, courts in this Circuit routinely conclude that delays similar to plaintiffs' preclude, or at least weigh heavily against, a finding of irreparable harm. *See, e.g., Damone v. Teamsters Local 804*, 18-CV-4059 (LDH) (ST), 2018 WL 7821134, at *2 (E.D.N.Y. Oct. 30, 2018) (denying preliminary injunction due to nine-month delay); *Monowise Limited Corp. v. Ozy Media, Inc.*, No. 17 Civ. 8028

(JMF), 2018 WL 2089342, at *2 (S.D.N.Y. May 3, 2018) ("Wherever the line distinguishing between acceptable and unacceptable delay may be, [plaintiff's nine-month] delay plainly falls on the unacceptable side."); *T–Mobile Ne. LLC v. Water Authority of W. Nassau County*, 249 F. Supp. 3d 680, 684 (E.D.N.Y. 2017) (seven-month delay indicated that alleged harm was not actual or imminent); *Insurance Co. of the State of Pa. v. Lakeshore Toltest JV, LLC*, No. 15 Civ. 1436 (ALC), 2015 WL 8488579, at *3 (S.D.N.Y. Nov. 30, 2015) (seven-month delay "undercuts a finding of irreparable injury"); *Dish Network, L.L.C. v. American Broad. Cos. (In re AutoHop Litig.)*, No. 12 Civ. 4155, 2013 WL 5477495, at *10 (S.D.N.Y. Oct. 1, 2013) (six-month delay weighed against finding of irreparable harm); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 70 (E.D.N.Y. 2006) (no irreparable harm where plaintiff waited five months to sue); *Worldwide Sport Nutritional Supplements, Inc. v. Five Star Brands, LLC*, 80 F. Supp. 2d 25, 35 (S.D.N.Y. 1995) (seven-month "delay between [plaintiff's] learning of the possible misappropriation [of trade secrets] and filing the Complaint and Order to Show Cause, is enough to defeat Plaintiff's motion for a preliminary injunction" (collecting cases)).

Plaintiffs' brief never addresses or attempts to explain their delay in seeking an injunction. Instead, they rely on the proposition that where plaintiffs allege First Amendment violations, irreparable harm is presumed. *See* Pls.' PI Br. 21 (citing cases). Notwithstanding that general principle, however, courts have taken account of plaintiffs' delays in moving for an injunction—and concluded that those delays weigh against a finding of irreparable harm—even where the plaintiffs assert First Amendment claims. *See, e.g.*, *Council for Responsible Nutrition v. James*, No. 24 Civ. 1881 (ALC), 2024 WL 1700036, *9 (S.D.N.Y. Apr. 19, 2024) ("Plaintiff's substantial and inexcusable delay in moving for preliminary relief five months after the State was enacted in October 2023, erodes its claims of immediate, irreparable, and impending injury."); *Shady v. Tyson*,

5 F. Supp. 2d 102, 108-09 (E.D.N.Y. 1998) (no irreparable injury when relief sought "more than one year after learning of the adverse employment decision"); *Costello v. McEnerny*, 767 F. Supp. 72, 78 (S.D.N.Y. 1991) (no irreparable harm where plaintiff sought relief one year after employment action he alleged violated First Amendment rights); *see also Million Youth March, Inc. v. Safir*, 18 F. Supp. 2d 334, 340 & n.36 (S.D.N.Y. 1998) (holding that "this case does not present facts upon which plaintiff's delay alone warrants a conclusion that irreparable harm is unlikely, particularly in light of the constitutional nature of plaintiff's claim," but declining to "say that delay, even unaccompanied by prejudice, never would justify denial of interlocutory relief in a case asserting constitutional claims"). Taking account of plaintiffs' delay is particularly appropriate where, as here, plaintiffs also fail to demonstrate a clear likelihood of success on the merits. *See infra*, Argument II.C. In any event, having waited nearly seven months before seeking relief, plaintiffs do not satisfy their high burden of demonstrating irreparable harm. *See Tom Doherty Associates*, 60 F.3d at 34 ("*strong* showing of irreparable harm" required to obtain mandatory injunction).

## C.     Plaintiffs Do Not Establish a Clear or Substantial Likelihood of Success on the Merits

Plaintiffs also do not satisfy their burden to establish likelihood of success under either standard for obtaining injunctive relief.

Plaintiffs do not establish a clear or substantial likelihood of success on their claim under the APA that the BFDF mail policy is arbitrary and capricious. *See* Pls.' PI Br. 20. The APA permits courts to "set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). But judicial review under the APA "is narrow and deferential," *Kakar v. USCIS*, 29 F.4th 129, 132 (2d Cir. 2022) (quotation marks omitted), and the reviewing court may not "substitute its judgment for that of the agency," *Citizens*

*to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971). Agency action may be set aside as arbitrary and capricious only where "'the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.'" *Natural Resources Defense Council v. EPA*, 658 F.3d 200, 215 (2d Cir. 2011) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Plaintiffs' assertion that the BFDF mail policy is "an arbitrary and capricious deviation from the ICE Standards [*i.e.*, the PBNDS]," Pls.' PI Br. 20, is unavailing. To begin, plaintiffs incorrectly conflate the PBNDS with agency regulations. *See id.* (citing cases). But even to the extent the PBNDS provides an appropriate basis for evaluating the BFDF mail policy under the APA, plaintiffs fail to account for ERO Buffalo's reasoned basis for enacting the policy. As explained in the Harvey Declaration, the policy was enacted—first in November 2023 and again, with modifications, in November 2024—in response to evidence (including detainee health emergencies) that drugs and synthetic materials were entering the facility through both the legal mail and in-person legal meetings. *See, e.g.*, Harvey Decl. ¶¶ 8-10, 16, 23-25. ERO Buffalo sought and obtained waivers of the PBNDS's standard mail requirements in order to enact this policy, *see id.* ¶¶ 12, 18, 21, and ICE ERO Headquarters granted those waivers based on its determination "that the BFDF faced an emergent situation with drugs and synthetic substances being sent to detainees at the BFDF via mail marked as legal mail," *id.* ¶ 12.

Indeed, AFOD Harvey explains that the overall goal of the policy is and has been to prevent "adverse health consequences to detainees and staff such as overdose or even death, and security concerns resulting from drug transactions among detainees." *Id.* ¶ 25. ERO Buffalo has balanced

that objective against the need "to ensure the confidentiality of genuine legal mail and special correspondence." *Id.* Further, the policy is not indefinite: "ERO Buffalo continually evaluates the safety and security of the BFDF and will modify its policies and procedures as circumstances warrant." *Id.* ¶ 26. On these facts, and particularly given the "narrow and deferential" scope of APA review, *Kakar*, 29 F.4th at 132, plaintiffs cannot show a clear or substantial likelihood of success on this claim.

Nor can plaintiffs meet their burden to show a clear or strong likelihood of success on their APA "contrary to law" and First Amendment claims. *See* Pls.' PI Br. 10-19, 21. To the contrary, courts have approved of policies similar to the BFDF mail policy that were implemented for similar safety and security reasons. "To balance both the security interests of the prison and the First Amendment rights of the inmate, courts have approved prison policies that permit prison officials to open 'legal mail' and inspect it for contraband in the presence of the prisoner." *Bray v. Mazza*, CIVIL ACTION NO. 4:21-CV-00119-JHM, 2022 WL 17836601, at *3 (W.D. Ky. Dec. 21, 2022) (citing cases). "This includes opening a prisoner's mail 'pursuant to a uniform and evenly applied policy with an eye to maintaining prison security.'" *Id.* (quoting *Sallier v. Brooks*, 343 F.3d 868, 873-74 (6th Cir. 2003)).

In *Bray*, the correctional facility adopted revised mail policies in response to a significant risk to jail security and safety because original mail items may have been sprayed, soaked, or otherwise coated with illegal substances. 2022 WL 17836601, at *4. Applying the four *Turner* factors, *see* Pls.' PI Br. 15-19, the court determined that the jail officials' "opening, copying, providing the inmate a photocopy of the legal mail, and withholding or discarding of the original legal mail pursuant to the [jail's] mail policy are related to a legitimate penological interest." 2022 WL 17836601, at *4. The court also concluded that removing the revised policy would "'allow

the previously existing risk of the entry of drugs to continue.'" *Id.* (quoting *Strebe v. Kanode*, No. 7:17-cv-00321, 2018 WL 4473117, at *6 (W.D. Va. Sept. 18, 2018)).  Other courts have likewise evaluated and upheld similar policies under the *Turner* factors.  *See, e.g.*, *Levine v. Bradshaw*, No. 22-80321-CIV, 2023 WL 11885182, at *5-*8 (S.D. Fla. July 6, 2023); *Strebe*, 2018 WL 4473117, at *5-7; *see also* Harvey Decl. ¶ 27 & Exs. H, I (recent news articles concerning similar mail issues and policies at other New York detention and correctional facilities).  At the very least, these decisions preclude plaintiffs from making a clear showing, let alone a strong one, that they will succeed on the merits of their claims.

So too does the lack of any specific allegations, in either plaintiffs' complaint or their preliminary injunction submissions, regarding incidents where any specific individual's legal mail was read or otherwise mishandled.  *Cf. Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("an isolated incident of mail tampering is usually insufficient to establish a constitutional violation"; "the inmate must show that prison officials regularly and unjustifiably interfered with the incoming legal mail").  Even if not dispositive of their First Amendment chilling claim, the lack of any specific allegations falls short of establishing plaintiffs' entitlement to an "extraordinary remedy," *Winter*, 555 U.S. at 24, particularly given AFOD Harvey's sworn statements that the BFDF policy requires legal mail to be opened in the presence of the detained individual, prohibits staff from reading legal mail, and requires that the original correspondence be sealed in the individual's property bin, *see* Harvey Decl. ¶¶ 13, 14, 22, 24, 25, 28.

**D.**    **Plaintiffs Do Not Make a Clear Showing That Preliminary Injunctive Relief Is in the Public Interest**

The final two factors, the balance of equities and the public interest, also weigh in defendants' favor.  *See Nken v. Holder*, 556 U.S. 418, 435–36 (2009) (final two factors merge when the government is the party opposing a motion for preliminary injunctive relief).  "In determining

whether the balance of the equities tips in the plaintiff's favor and whether granting the preliminary injunction would be in the public interest, the Court must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief, as well as the consequences in employing the extraordinary remedy of injunction." *Bionpharma Inc. v. CoreRx, Inc.*, 582 F. Supp. 3d 167, 178 (S.D.N.Y. 2022) (quotation marks omitted).

Because, as explained above, plaintiffs cannot establish the first two factors necessary to obtain a preliminary injunction, "it is clear they cannot make the corresponding strong showings [on the second two factors] required to tip the balance in their favor." *Davis v. Pension Benefit Guarantee Corp.*, 571 F.3d 1288, 1295 (D.C. Cir. 2009). Indeed, these factors tip in defendants' favor if the Court were to consider them further. As with their irreparable harm argument, plaintiffs' public interest argument rests almost entirely on the fact that they allege a constitutional violation. *See* Pls.' PI Br. 23. But here—unlike in the cases on which plaintiffs rely—defendants are not asserting only "'financial or administrative burdens,'" *id.* (quoting *Deide v. Day*, 676 F. Supp. 3d 196, 232-33 (S.D.N.Y. 2023)), and the BFDF policy is not "unlawful, arbitrary, and capricious," *id.* (quotation marks omitted). Rather, ERO Buffalo has asserted safety and security concerns based on evidence of contraband entering BFDF, resulting at times in the hospitalization of detained individuals. *See, e.g.*, Harvey Decl. ¶ 8. BFDF is obliged to protect "the health and wellbeing of its detainees and staff," and the mail policy has been "tailored . . . to ensure the confidentiality of genuine legal mail." *Id.* ¶ 25. As explained above, the policy likely survives APA review, and courts have upheld similar policies in the face of similar First Amendment challenges. *See supra* Argument, II.B, II.C. Accordingly, plaintiffs cannot carry their burden of making a clear showing that the public interest favors injunctive relief.

## CONCLUSION

For the foregoing reasons, the Court should decline to adjudicate plaintiffs' motion for a preliminary injunction and grant defendants' motion to transfer this matter to the U.S. District Court for the Western District of New York. In the alternative, the Court should deny plaintiffs' motion for a preliminary injunction.[2]

Dated: New York, New York
June 10, 2025

Respectfully submitted,

JAY CLAYTON
United States Attorney for the
Southern District of New York

By: /s/ *Christopher K. Connolly*
CHRISTOPHER K. CONNOLLY
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2761
E-mail: christopher.connolly@usdoj.gov

---

[2] In accordance with Fed. R. Civ. P. 65(c) and the President's March 11, 2025, memorandum titled "Ensuring the Enforcement of Federal Rule of Civil Procedure 65(c)," if the Court enters a preliminary injunction, defendants respectfully request that the Court require plaintiffs to post a bond of $10,000. *See* Fed. R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."); www.whitehouse.gov/presidential[1]actions/2025/03/ensuring-the-enforcement-of-federal-rule-of-civil-procedure-65c/.

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 5,704 words.