USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/25/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                      :

PRISONERS' LEGAL SERVICES OF NEW
YORK, *et al.*,

                            Plaintiffs,

               -v-

UNITED STATES DEPARTMENT OF
HOMELAND SECUITY, *et al.*,

                            Defendants.
------------------------------------------------------------------ X

1:25-cv-1965-GHW

MEMORANDUM OPINION &
ORDER

GREGORY H. WOODS, United States District Judge:

      Plaintiffs Prisoners' Legal Services of New York ("PLSNY"), the New York Civil Liberties Union (the "NYCLU"), and Robert F. Kennedy Human Rights ("RFKHR") provide *pro bono* legal services to immigrants detained at the Buffalo Federal Detention Facility ("BFDF"). BFDF is an immigration-detention facility in Batavia, New York, in Genesee County, which lies in the Western District of New York. Around November 2024, Defendants expanded a "legal mail policy" at BFDF, under which United States Immigration and Customs Enforcement ("ICE") officers working at that facility inspect, copy, and retain all legal documents sent to or from detainees. This policy applies categorically to all incoming and outgoing correspondence, with no exception for attorney-client communications.

      Plaintiffs filed this action in response, asserting that Defendants' policy violates the Administrative Procedure Act ("APA") and their First Amendment right to speak freely through privileged and confidential communications with their clients detained at BFDF. The threshold question is whether this action should be litigated in the Southern District of New York or the Western District of New York. All of the events underlying this case occurred at BFDF itself where the legal mail policy was developed, implemented, and enforced. And none of the events underlying this case occurred in the Southern District of New York. Because the only connection to this

district is that two of the three Plaintiffs reside here and because Plaintiffs' arguments against transfer ignore their APA claim entirely—Defendants' motion to transfer this case to the Western District of New York is GRANTED.

## I. BACKGROUND

### A. Factual Background

Plaintiffs are three "nonprofits who provide *pro bono* legal services" to individuals detained at BFDF. Dkt. No. 1 ("Compl.") ¶¶ 1, 8–10. PLSNY is incorporated in New York State and maintains offices in Buffalo, Newburgh, Ithaca, and Albany. Dkt. No. 23 ("Nowak Decl.") ¶ 3. The NYCLU is also incorporated in New York State, with its headquarters in Manhattan at 125 Broad Street. Dkt. No. 24 ("Belsher Decl.") ¶ 3. RFKHR is incorporated in Washington, D.C., and maintains two offices, one in D.C., and one in Manhattan, located at 88 Pine Street. Dkt. No. 22 ("Gillman Decl.") ¶ 3. Defendants are federal agencies and officers residing in both Washington, D.C. and in the Western District of New York. Dkt. No. 31 ("Mem.") at 6; Compl. ¶¶ 11–15. Defendant United States Department of Homeland Security ("DHS") oversees the national immigration-detention system. Compl. ¶¶ 11–12. Defendant United States Immigration and Customs Enforcement ("ICE") is the DHS subagency that operates BFDF. *Id.*

BFDF is located in Batavia, New York in Genesee County, which lies in the Western District of New York. Gillman Decl. ¶ 11. At BFDF, non-citizens charged with violating federal immigration law are detained for immigration proceedings and removal from the United States. Dkt. No. 46 ("Harvey Decl.") at ¶ 5.

In November 2024, following an alleged increase in mail containing drugs and synthetic substances, Harvey Decl. at ¶ 23, Defendants reinstituted, and expanded the scope of, a "legal mail policy" at BFDF. Compl. ¶¶ 2–3. Under this expanded policy, ICE officers "inspect, copy, and retain all legal mail" sent to or from individuals detained at BFDF "by any means," including

"documents given in-person" by attorneys meeting with clients at BFDF. *Id.* ¶¶ 2–3. The policy "applies categorically to all incoming and outgoing" correspondence at BFDF, including privileged correspondence between attorneys and clients. *Id.* ¶¶ 2–3. Since the policy was reinstated, Plaintiffs no longer "send legal mail to [their] clients" detained at BFDF, Gillman Decl. ¶ 9, and are wary of "handing over written documents during visits because doing so invites document review and retention by ICE officers." Nowak Decl. ¶ 5. Instead, Plaintiffs "rely more on in-person visits to orally communicate with clients," and "have opted to read documents to clients rather than hand over written documents," *id.* ¶¶ 6, 7, incurring additional expenses and expending additional time to do so. *Id.* ¶¶ 7–8; Belsher Decl. ¶¶ 8–9. Plaintiffs assert that the policy "has interfered with the[ir] ability . . . to communicate freely and effectively with their clients" and interfered with the effective provisions of legal services to those clients." Compl. ¶¶ 32, 34.

### B. Procedural History

Plaintiffs filed this action on March 10, 2025, asserting claims for violations of the First Amendment and the APA, 5 U.S.C. § 706(2)(a). *Id.* ¶¶ 39–45. Although the complaint asserts that "[v]enue is proper under 28 U.S.C. § 1391(b), (e),"—it does not assert that any fact or conduct underlying Plaintiffs' claims took place in Manhattan. *Id.* ¶ 3.

On March 11, 2025, the Court ordered Plaintiffs to show cause as to why this case should not be transferred to the Western District of New York given that the "entire case arises from alleged conduct at BFDF in Genesee County," which lies in that district. Dkt. No. 8 (the "OTSC"), at 2 (citing 28 U.S.C. § 112(d)). On April 4, 2025, Plaintiffs filed their response, in which they make the same arguments they make in their opposition to Defendants' motion to transfer this case. *Compare* Dkt. No. 21 ("OTSC Resp."), *with* Dkt. No. 32 ("Opp'n"). In support of their response, Plaintiffs submitted three declarations from: (1) Sarah T. Gillman, Director of Strategic United States Litigation, United States Advocacy and Litigation at RFKHR; (2) Jillian Nowak, attorney at

3

PLSNY; and (3) Amy Belsher, Senior Staff Attorney at NYCLU. *See* Gillman Decl.; Nowak Decl.; Belsher Decl. These declarations highlight that, following the implementation of the legal mail policy, Plaintiffs stopped communicating with their clients by mail, Gillman Decl. ¶ 9; Nowak Decl. ¶ 7, and now "rely more on in-person visits to orally communicate with clients." Nowak Decl. ¶ 7. All three declarants attest that this "de facto" travel requirement imposes significant "time and monetary" burdens on the nonprofit Plaintiffs, which already operate on limited budgets. Gillman Decl. ¶ 11; Nowak Decl. ¶ 6; Belsher Decl. ¶ 8. On April 6, 2025, the Court declined either to take further action on the order to show cause or to determine, on its own initiative, whether this case should be transferred. Dkt. No. 25. However, the Court stated it would consider any motion to transfer this case brought by Defendants.

On April 28, 2025, Defendants filed a motion to transfer this case to the United States District Court for the Western District of New York pursuant to 28 U.S.C § 1404(a). *See generally* Mem. In their motion, Defendants argue that this action should be transferred because all the operative facts giving rise to Plaintiffs' claims occurred in the Western District of New York and because that district is more convenient for both party and non-party witnesses. *Id.* at 1. Defendants also argue that because this district "has no connection to the underlying dispute," any deference the Court should afford to Plaintiffs' choice of forum is "measurably diminished." *Id.* ¶¶ 1–2.

Plaintiffs filed their opposition to the motion on May 9, 2025. *See* Opp'n. Plaintiffs argue that their choice of forum is entitled to "significant deference" because two of the three Plaintiff organizations are "at home" in the Southern District. *Id.* at 1. Plaintiffs also assert a second, independent reason for affording their choice of forum "significant deference"—the NYCLU and RFKHR's speech, they claim, was chilled in this district, "where they would have sent and received legal correspondence with their clients detained at BFDF." *Id.* at 7. Plaintiffs do not balance their

4

alleged "situs of harm" against the remaining operative facts underlying their claims. *Id.* at 7, 10. Nor do Plaintiffs acknowledge that there is one place where all three Plaintiffs were harmed equally—at BFDF where all three Plaintiffs' in-person correspondence was inspected and where the facts underlying Plaintiffs' APA claim occurred. Compl. ¶¶ 3, 29, 30, 33, 36. Plaintiffs argue that the other factors either weigh in favor of litigating the case in this district or are neutral. Opp'n at 2. Defendants replied on May 16, 2025, reiterating many of their earlier arguments. In their reply, Defendants also argue that Plaintiffs' argument that their choice of venue is entitled to deference because this district is the "situs" of the alleged First Amendment harm is in tension with decisions from this Circuit. Dkt. No. 33 ("Reply"), at 2.

On April 6, 2025, the Court referred this case to Magistrate Judge Valerie Figueredo for general pretrial matters and for dispositive motions requiring a Report and Recommendation. Dkt. No. 46. The Court is withdrawing the reference with respect to the disposition of this motion.

## II.     LEGAL STANDARD

28 U.S.C. § 1404(a) allows a district court to transfer a case for the convenience of parties and witnesses to "any other district or division where it might have been brought" if doing so is "in the interest of justice." *See* 28 U.S.C. § 1404(a). The Court evaluates a potential transfer pursuant to § 1404(a) in two steps. First, the Court must ask whether the case might have been brought in the proposed transferee district. *See Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285 (S.D.N.Y. 2004). "An action 'might have been brought' in the forum to which the movant seeks to transfer it if subject matter jurisdiction, personal jurisdiction, and venue would have been proper in the transferee court at the time of filing." *City of Pontiac Gen. Employees Ret. Sys. v. Dell Inc.*, No. 14-CV-3644 (VSB), 2015 WL 12659925, at *2 (S.D.N.Y. Apr. 30, 2015).

If that threshold inquiry is satisfied, the Court proceeds to the second step and determines whether a transfer is appropriate. *See id.* at *2. In so doing, the Court considers the following

5

factors to determine whether to grant the requested transfer:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances.

*Jean-Louis v. ACS*, No. 22-CV-8457 (LJL), 2022 WL 16857359, at *2 (S.D.N.Y. Oct. 14, 2022); *see also Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459–60 (S.D.N.Y. 2011) (same). The list of factors is not exhaustive. *Pausch Med. GmbH v. Pausch LLC*, 2015 WL 783365, at *1 (S.D.N.Y. Feb. 24, 2015). Furthermore, "[t]here is no rigid formula for balancing these factors[,] and no single one of them is determinative." *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000). Rather, "weighing the balance is essentially an equitable task left to the Court's discretion." *Id.* (internal quotation marks omitted). Indeed, district courts have broad discretion in deciding, on a case-by-case basis, whether to transfer the venue of a given litigation based on "notions of convenience and fairness." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006).

### III. Discussion

#### A. Venue is proper in the Western District of New York

No party disputes that venue is proper in the Western District of New York. Mem. at 6 ("[T]his action could have been brought in the Western District of New York."); *see generally* Opp'n. That court has jurisdiction over the parties. PLSNY is incorporated in New York State and "maintains offices" in Buffalo, Newburgh, Ithaca, and Albany. Dkt. No. 23 at 2, ¶ 3. The NYCLU is also incorporated in New York State. Dkt. No. 24 at 1, ¶ 3. Although RFKHR is incorporated in Washington, D.C., it maintains "two co-equal offices," including one in Manhattan—where its president has her in-person office and where its attorneys representing the BFDF detained clients work. By seeking the transfer of this case to that district, Defendants have consented to the

6

jurisdiction of that court. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("[A] party may simply consent to a court's exercise of personal jurisdiction."). And this case could have been brought in the Western District because at least two "[D]efendant[s] in the action reside[]" in that district. 28 U.S.C. § 1391(e)(1). Plaintiffs do not contest that this action could have been brought in the Western District of New York. *See generally* Opp'n. Because this case could have been brought in the Western District of New York, the first requirement for its transfer is satisfied.

### B. The § 1404(a) factors weigh in favor of transfer

While Plaintiffs' choice of forum weighs slightly in favor of retaining this case in this district, all of the other factors either weigh in favor of transfer or are neutral. Accordingly, Defendants' motion to transfer is granted.

#### 1. The weight accorded to Plaintiff's choice of forum

Plaintiffs' choice of forum weighs only slightly against transfer here. "Generally, courts give a plaintiff's choice of forum 'considerable weight.'" *CVS Pharmacy, Inc. v. AstraZeneca Pharms. L.P.*, No. 19-CV-10049 (CM), 2020 WL 4671659, at *7 (S.D.N.Y. Aug. 12, 2020); *see also Idle Media, Inc. v. Create Music Grp., Inc.*, No. 24-CV-00805 (JLR), 2024 WL 5009713, at *18 (S.D.N.Y. Dec. 6, 2024) ("The Second Circuit has consistently held that a 'plaintiff's choice of forum is presumptively entitled to substantial deference.'") (quoting *Gross v. BBC*, 386 F.3d 224, 230 (2d Cir. 2004)). However, "[w]hen the operative facts have few meaningful connections to the plaintiff's chosen forum," the importance of the plaintiff's choice "measurably diminishes." *Harris v. Brody*, 476 F. Supp. 2d 405, 406 (S.D.N.Y. 2007).

Because both the NYCLU and RFKHR are at home in this district, Plaintiffs' choice of forum is entitled to some weight. *CVS Pharmacy, Inc.*, 2020 WL 4671659, at *7. But, because the operative facts, related to this dispute have a limited "meaningful connection" to the Southern District of New York, the importance of Plaintiffs' choice of forum, and the deference the Court

7

affords to that choice, is "measurably diminishe[d]." *See Harris*, 476 F. Supp. 2d at 406. As the Court has noted, "this entire case arises from alleged conduct at the BFDF in Genesee County, which lies in the Western District of New York." OTSC at 2. Plaintiffs do not contest that the legal mail policy was developed and adopted at BFDF, which lies in the Western District; that all inspection, copying, and retention of legal mail was conducted at BFDF; or that when ICE officers read a detained individual's mail while copying it, those officers read the mail at BFDF. Compl. ¶¶ 15, 16, 17, 20 ("In over a dozen instances observed by PLSDNY's detained client, ICE officers [] read an individual's legal mail while copying the mail."). As a result, there is a "lack of any meaningful nexus between the claims [they] assert and this District." *Idle Media, Inc.*, 2024 WL 5009713, at *18.

In their opposition, Plaintiffs assert that their choice of venue is entitled to additional, "considerable deference" because the NYCU and RFKHR were harmed in the Southern District of New York, where they stopped sending and receiving legal mail to and from individuals detained at BFDF.[1] Opp'n at 10, 11 (citing *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009) (holding

---

[1] To the extent Plaintiffs read *Daniel v. American Board of Emergency Medicine*, 428 F.3d 408 (2d Cir. 2005), to suggest that they "have a right to venue in this [d]istrict," they misread that decision. Opp'n at 7. Indeed, as *Daniel* itself acknowledged, § 1391(b)(2) specifically "contemplates that venue can be appropriate in more than one district," *Daniel*, 428 F.3d at 432 (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356 (2d Cir. 2005)), but that does not mean that transfer is not warranted to a more appropriate venue on balance. § 1404(a); *see City of Pontiac Gen. Employees Ret. Sys.*, 2015 WL 12659925, at *2. And Plaintiffs misconstrue that decision—*Daniel* was about venue not transfer. *Id.* at 432 (holding that determining whether venue is proper under § 1391(b)(2) involves a two-part inquiry). *Daniel* does not suggest that determining whether venue is proper under § 1391(b)(2)'s "substantial events or omissions" requirement is the same inquiry as determining whether transfer is appropriate under § 1404(a). As such, Plaintiffs' reliance on cases applying the *Daniel* two-part venue inquiry, like *Kalman*, is misplaced. *Kalman v. Cortes*, 646 F.Supp.2d 738, 742 (E.D. Pa. 2009). In *Kalman*, the Eastern District of Pennsylvania concluded:

> Plaintiffs suing because their freedom of expression have been unjustifiably restricted suffer harm only where the speech would have taken place, as opposed to the district in which the statute was written and the decision to restrict plaintiffs' speech was made. The suppression itself is a more "substantial" event than the decision to suppress the speech and is the most important event in the origin of a First Amendment suit.

*Id.* at 742 (citation modified). Like the Circuit in *Daniel*, the court in *Kalman* reached this conclusion when analyzing whether venue was appropriate in the plaintiff's chosen district—not when analyzing whether transfer was appropriate to another district. *Daniel*, 428 F.3d at 431–31. ("[O]ur court has had few occasions to interpret § 1391(b)(2).").

that where plaintiffs are harmed is the "most important event" in a First Amendment suppression case)) ("[T]he chilling caused by Defendants' policy takes place where Plaintiffs would otherwise exercise their First Amendment rights."). Accepting Plaintiffs' argument that some weight should be afforded to the district where Plaintiffs were harmed, Plaintiffs here were harmed in multiple places—the Southern District of New York, the Northern District of New York, and the Western District of New York. And there is only one district where all three Plaintiffs were harmed—the Western District of New York, as discussed further below. As a result of these facts, the Court concludes that Plaintiffs' choice to file in the Southern District of New York weighs against transfer, but only slightly.

### 2. The locus of operative facts

The factor that weighs most heavily in favor of transfer is the locus of operative facts. "The location of operative facts is a primary factor in determining a § 1404(a) motion to transfer." *Rosen v. Ritz-Carlton Hotel Co. LLC*, 14-CV-1385 (RJS), 2015 WL 64736, at *4 (S.D.N.Y. Jan. 5, 2015) (quoting *Whitehaus Collection v. Barclay Prod.*, Ltd., 11-CV-217 (LBS), 2011 WL 4036097, at *2 (S.D.N.Y. Aug. 29, 2011)). This factor "substantially favors transfer from this district when a party has not shown that any of the operative facts arose in the Southern District of New York." *SEC v. Hill Int'l, Inc.*, No. 20-CV-447 (PAE), 2020 WL 2029591, at *4 (S.D.N.Y. Apr. 28, 2020) (internal citation and quotation marks omitted). In determining the locus of operative facts, "a court must look to the site of the events from which the claim arises." *Royal & Sun All. Ins., PLC v. Nippon Express USA, Inc.*, 202 F. Supp. 3d 399, 408 (S.D.N.Y. 2016) (citation omitted).

Not a single fact related to the development, adoption, or implementation of the legal mail policy occurred in this district. Because none of the operative facts arose in this district, this factor "substantially favors transfer." *SEC v. Hill Int'l, Inc.*, 2020 WL 2029591, at *4. Almost every factual allegation in the complaint involves events or conduct that arose at BFDF. The legal mail policy

9

was developed and adopted at BFDF in response to BFDF-specific concerns regarding an alleged increase in mail containing drugs and synthetic substances. Harvey Decl. ¶¶ 8, 23 ("BFDF was experiencing an emergency situation regarding drugs and synthetic substances being sent to the detained population via the U.S. mail service."). Indeed, the policy was developed to "protect BFD staff" because BFDF staff "complained about detainees smoking . . . within the facility and how it affected the facility's air quality, made them sick, and created an unsafe work environment." *Id.* ¶¶ 8–9, 23 ("BFDF medical staff complained about the air quality within the facility and how it gave them headaches and made them feel dizzy and nauseous."). In response to these concerns, the policy was initially developed by George P. Harvey Jr., the Assistant Field Office Director at BFDF, and approved by the Buffalo Field Office Director. *Id.* ¶¶ 1, 9, 24.

The policy is also implemented at BFDF where ICE inspects, copies, and retains all outgoing mail at BFDF itself. Compl. ¶ 15. The same is true for all incoming mail, which is opened, inspected, and reviewed inside BFDF's "mail processing area" directly in front of the detained individuals to whom that correspondence is addressed. *Id.* ¶¶ 16–19. Plaintiffs' allegation that PLSNY's detained client observed over a dozen instances where "ICE officers have read an individual's legal mail while copying that mail" also arose at BFDF in the Western District. *Id.* ¶ 20. Nor can Plaintiffs contest that the confiscation, inspection, and copying of legal documents given by Plaintiffs to their clients during "in-person" meetings at BFDF arose anywhere other than inside BFDF itself in the Western District. *Id.* ¶¶ 29, 30. And as Plaintiffs concede, "Defendants' unconstitutional policy forces them to travel in-person to BFDF." Opp'n at 10; OTSC Resp. at 8–9.

And again, accepting Plaintiffs' argument that the Court should consider where Plaintiffs were harmed, that "locus of harm" still weighs in favor of transfer in this case. *See Fedele v. Harris*, 18 F. Supp. 3d 309, 318 (E.D.N.Y. 2014) ("[A]lthough the Court considers the situs of the alleged harm as a factor in its venue analysis, . . . Plaintiffs have not shown that a substantial part of the events or

10

omissions giving rise to their claims occurred in th[is] district."); *Astor Holdings, Inc. v. Roski*, No. 1-CV-1905, 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002) ("There is an obvious potential for unbounded venue if the courts were to find venue regardless of where the acts occurred, based solely on the existence of economic harm felt in the district where the plaintiff resides or is headquartered."). First, as to Plaintiffs' First Amendment claim, at minimum, Plaintiffs were harmed as a result of the policy in three districts. *Kalman*, 646 F. Supp. 2d at 742 ("A First Amendment plaintiff suffers harm only where the speech would have taken place). NYCLU and RFKHR were harmed in this district where their speech was suppressed because their main offices are here.[2] Opp'n at 11; Gillman Decl. ¶¶ 3, 4; Belsher Decl. ¶¶ 2, 4, 7. Plaintiffs admit that PLSNY was harmed in both the Northern and Western Districts of New York, where its speech was suppressed. Opp'n at 11. But, importantly, all three Plaintiffs were harmed in the Western District of New York where all their speech was suppressed when ICE officers obtained Plaintiffs' in-person privileged communications. Compl. ¶¶ 3, 29, 30, 33, 36. Thus, considering where Plaintiffs were harmed also favors transfer to where all Plaintiffs equally experienced the same harm—the chilling of in-person privileged communications.

"Plaintiffs' treatment of the locus of operative facts fails to account entirely for their APA Claim." Mem. at 3. An APA claim involves no chilling of speech and any harm to Plaintiffs therefore occurs where the policy was developed, approved, and implemented. On their APA claim, Plaintiffs all suffered harm where the policy was developed and adopted, that is, in the Western District of New York. The Western District is also where the legal mail policy which allegedly

---

[2] It is not clear whether the "site of harm" even lies in this district. *See Adams Outdoor Advert. Ltd. P'ship v. Pennsylvania Dep't of Transp.*, 307 F. Supp. 3d 380, 397–98 (E.D. Pa. 2018) (holding that plaintiff's speech was suppressed for purposes of determining whether venue was proper "where [plaintiff's] proposed billboard would be located"). Neither party has cited any precedent concerning whether Plaintiffs' speech was "suppressed" where they would have written the privileged communications rather than where those communications were inspected, read, and copied pursuant to the policy. Mem. at 8 (arguing, without citation, that Plaintiffs' "speech would have taken place, and thus the relevant harm occurs, in the Western District of New York"); Opp'n at 11 (arguing that "the chilling caused by Defendants' policy takes place where [Plaintiffs] would otherwise exercise their First Amendment rights").

11

"deviates from ICE Standards" was implemented. Compl. ¶ 45. Thus, "the site of the events from which [Plaintiffs'] [APA] claim arises" is only in the Western District of New York. *Royal & Sun All. Ins., PLC,* 202 F. Supp. 3d at 408. Plaintiffs' opposition ignores this claim entirely. Therefore, both of Plaintiffs' claims have a nexus with the Western District of New York and only one has an arguable connection with this district. Accordingly, this factor weighs overwhelmingly in favor of transfer.

### 3. The convenience of the witnesses

Transfer will increase convenience for the likely witnesses identified in this case. "The convenience of both party and nonparty witnesses is probably considered the single most important factor in the analysis of whether a transfer should be granted" and the convenience of non-party witnesses is given greater weight than that of party witnesses. *Morling v. Michaels Cos. Inc.*, No. 23-CV-8240 (VSB) (VF), 2025 WL 602944, at *2 (S.D.N.Y. Feb. 25, 2025) *(quoting Aerotel, Ltd. v. Sprint Corp.*, 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)). "To succeed on a transfer motion, the moving party must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." *AEC One Stop Grp., Inc. v. CD Listening Bar, Inc.*, 326 F. Supp 2d. 525, 529 (S.D.N.Y. 2004) (internal quotations and citations omitted). However, "a specific showing is required only when the movant seeks a transfer *solely* 'on account of the convenience of witnesses.' [If the movant] seeks a transfer 'on account of several factors, his failure to specify key witnesses and their testimony is not fatal.'" *Larew v. Larew*, No. 11 Civ. 5771, 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012) (quoting *Connors v. Lexington Ins. Co.*, F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original)). Moreover, the Court "does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum," but rather "must qualitatively evaluate the materiality of the testimony that the witnesses may provide." *Herbert Ltd. P'ship*, 325 F. Supp. 2d at 286.

Because Defendants do not "seeks a transfer *solely* on account of the convenience of witnesses[,]" they are not required to make a specific showing as to the identity of any witnesses. *Larew*, 2012 WL 87616, at *4. Regardless, the Court can anticipate some likely witnesses. Some attorneys working for NYCLU and RFKHR may be called to testify, and those attorneys likely reside here. OTSC Resp. at 10. However, any witnesses from PLSNY will need to travel from either Buffalo or Albany. Nowak Decl. ¶¶ 3, 4. Some Defendant witnesses are located in Washington, D.C., where the Department of Homeland Security and ICE are headquartered. *See* OTSC at 10.

But as Plaintiff concedes, there are "Defendant witnesses located in the Western District of New York." *Id.* Importantly, those witnesses are likely to provide the more material testimony relevant to this case because those witnesses were involved in developing, approving, and implementing the policy underlying Plaintiffs' claims. *Herbert Ltd. P'ship*, 325 F. Supp. 2d at 286. Helpfully, Plaintiffs have identified some of these witnesses themselves including: "adverse third parties, namely . . . ICE officers [and] employees . . . who staff BFDF." OTSC Resp. at 1. These potential witnesses enforce the challenged legal mail policy. They are also the individuals who "inspect, copy, and retain all legal mail" sent to or from individuals detained at BFDF. Compl. ¶¶ 2–3. Their testimony is particularly material here and weighs in favor of transfer.

The convenience of non-party witnesses is given greater weight than that of party witnesses. *Morling*, 2025 WL 602944, at *2. There are two categories of potential non-party witnesses whose testimony is also particularly material to this case: (1) individuals detained at BFDF; and (2) those contractors—as opposed to government employees—who staff BFDF. OTSC Resp. at 1. Plaintiffs suggest that detained individuals would be available to testify here because they can "presumably be transported to any forum" requiring their presence. Opp'n. at 14 (citing *Keitt*, 882 F. Supp. 2d at

13

459).[3]  The Court affords this argument little weight.  It is more convenient for the detained non-party witnesses to testify in the forum they are already in than it would be to shuttle those witnesses elsewhere.  And it is also more convenient for the non-party contractors to testify in the Western District of New York, where they work and likely reside.  Because it is more convenient for non-party witnesses to testify in the Western District of New York and because and the Court affords that convenience greater weight, this factor weighs in favor of transfer.

### 4. The convenience of the parties

The factor regarding the convenience of the parties is neutral.  Typically, the convenience of the parties "becomes neutral when transfer would merely shift the inconvenience from the non-movant to the movant."  *Penrose v. New York Life Ins. Co.*, No. 22-CV-2184 (JPC), 2023 WL 6198249, at *5 (S.D.N.Y. Sept. 22, 2023).  Because the two named individual Defendants are located in the Western District of New York, Defendants argue that transfer is more convenient.  Mem. at 12.  Plaintiffs correctly counter that courts "presume that government employees are available in any venue."  Opp'n at 15; *Barry v. United States*, No. 21-CV-7684, 2022 WL 4467504, at *6 (S.D.N.Y. Sept. 26, 2022).  But this a general rule.  In cases like this one, where government employees "with personal knowledge of the relevant facts [are] [named] individual defendants," and those defendants "live and work" in the proposed transferee district, courts have held that transfer is more convenient.  *Id.* (citing *Ruiz ex rel. v. United States*, No. 13-CV-1241, 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) (transferring case to the Eastern District of Virginia, where the minor plaintiff had been detained, partly because all the named Customs and Border Patrol Officers with personal

---

[3] Plaintiffs' argument is inapposite.  *Keitt* does not suggest that any inconvenience to non-party incarcerated (or detained) witnesses can be ameliorated by simply transporting those witnesses to whatever district Plaintiffs choose.  And the language Plaintiffs cite here was regarding the factor analyzing the "relative means of the parties" not the convenience of witnesses.  *Keitt*, 882 F. Supp. 2d at 459 ("There would be little, if any difference, between these districts with respect to . . . the *relative means of the parties* (given that the incarcerated *plaintiff* would presumably be transported to any forum requiring his presence).") (emphasis added).

14

knowledge of relevant facts were stationed in that district, and none resided in New York)). This case easily fits within that exception. Plaintiffs named Joseph E. Freden, Deputy Field Officer Director of BFDF, as a defendant. Compl. ¶ 14. Mr. Freden works at BFDF where "he is responsible for deciding and implementing operational procedures." *Id.* Plaintiffs also named Thomas Brophy, the ICE Enforcement and Removal Operations Buffalo Field Office Director. *Id.* ¶ 15. Mr. Brophy "is the local ICE official responsible for individuals detained" at BFDF. *Id.* Both these individual Defendants "have personal knowledge" of the facts underlying Plaintiffs' claims and both Defendants work in the Western District of New York. *Barry*, 2022 WL 4467504, at *6. Thus, transfer is more convenient for Defendants'.

To be sure, transfer would inconvenience some Plaintiffs. The NYCLU and RFKHR have offices in Manhattan. Gillman Decl. ¶ 3; Belsher Decl. ¶ 3. Traveling to the Western District of New York is undoubtedly more inconvenient for the NYCLU and RFKHR than litigating this case here. *See* Belsher Decl. ¶ 8 ("There is a significant time and monetary burden imposed on NYCLU for its legal representatives to travel to . . . the Western District of New York.").

Transfer to the Western District of New York would be more convenient for some PLSNY attorneys and less convenient for others. PLSNY maintains offices in Albany, Ithaca, Buffalo, and Newburgh. Nowak Decl. ¶¶ 3. Although PLSNY's central office is located in Albany, PLSNY's immigration case handlers are split equally between that Albany office and PLSNY's Buffalo office. *Id.* ¶¶ 3, 4. For some PLSNY attorneys, travel to the courthouse in the same district they work in would be more convenient. For those PLSNY attorneys working in Albany, the Court agrees that traveling to the Southern District may be more convenient. PLSNY asserts that this district is the "most convenient forum" because traveling to BFDF generally is inconvenient. *See id.* ¶¶ 8, 9. This argument conflates the burdens of traveling to BFDF—checking-in at the facility, passing through gated security, recording identification and license plate numbers, a second in-person check-in and

15

screening, passing through metal detectors, placing belongings in secure lockers, and then waiting to get called into a small visitation booth, Nowak Decl. ¶ 8—with the burdens of traveling to the Western District of New York courthouse.  In sum, transfer is more convenient for some, but not all, Defendants.  And transfer is inconvenient for some, but not all, Plaintiffs.  Accordingly, this factor is neutral.

### 5. The location of relevant documents and the relative ease of access to sources of proof

The location of relevant documents and evidence also weighs in favor of transfer.  "The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."  *Am. S.S. Owners Mut. Prot. and Indem. Ass'n v. Lafarge N. Am.*, 474 F. Supp. 2d. 474, 484 (S.D.N.Y. 2007); *see also McGraw-Hill Companies Inc. v. Jones*, 12-CV-7085 (AJN), 2014 WL 988607, at *9 (S.D.N.Y. Mar. 12, 2014) (Nathan, J.).  However, "it is improper to ignore [it] entirely."  *In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1224 (Fed. Cir. 2011).  Because Plaintiffs assert an APA claim, Defendants must compile and certify an administrative record.  Mem. at 13.  Plaintiffs do not contest that an administrative record is required in this case, but argue that some documents needed to compile that record are likely physically located in the Southern District of New York at NYCLU and RFKHR's offices.  *See* Opp'n at 17.  But it is Defendants' obligation to compile an administrative record, not Plaintiffs'.  *Comprehensive Cmty. Dev. Corp. v. Sebelius*, 809 F. Supp. 2d 305, 309 (S.D.N.Y. 2020) ("It is the province of the agency to compile and submit the administrative record.").  Therefore, this factor weighs in favor of transfer.

### 6. The availability of process to compel the attendance of unwilling witnesses

The parties agree that the factor regarding the availability of process to compel the attendance of unwilling witnesses is neutral.  Mem. at 14; OTSC Resp. at 11.  The Western District of New York has the same authority as this Court to subpoena witnesses from other jurisdictions.

OTSC Resp. at 11 (citing *Keitt*, 882 F. Supp. 2d at 4). Therefore, the Court agrees that this factor is neutral.

### 7. The relative means of the parties

The relative means of the parties weighs against transfer, but has moderate weight. "Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." *Herman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998); *accord Zinky Elecs. LLC v. Victoria Amplifier Co.*, 2009 WL 2151178, at *7–8 (D. Conn. June 24, 2009). However, this factor will be accorded "little or no significance" absent a showing of disparity of means between the plaintiff and the defendant. *Larew*, 2012 WL 87616, at *7 (quoting *Hernandez v. Graebel Van Lines*, 761 F. Supp. 983, 989 (E.D.N.Y. 1991)).

In this case, three *pro bono* legal service providers are suing federal agencies and certain federal officials in their individual capacity. There is a disparity between the parties here. Plaintiffs, as nonprofit *pro bono* legal service providers, have a limited budget, "with limited financial and human resources." Belsher Decl. ¶ 8; *see* Gillman Decl. ¶ 11; Nowak Decl. ¶ 6. Although the government "is quick to point out that in this case plaintiff[s] are represented by . . . a large and well-resourced law firm," the government cannot dispute that "its means are greater than" Plaintiffs'. *Barry*, 2022 WL 4467504, at *6; *see* Resp. at 6. Accordingly, the Court concludes that this factor weighs against transfer, but that it has moderate weight.

### 8. The forum's familiarity with the governing law

Defendants concede that this factor is "at most, neutral, with respect to . . . this action." Mem. at 14. Plaintiffs do not dispute that this factor is neutral. Opp'n at 16; OTSC Resp. at 13. And Plaintiffs do not assert that the Western District of New York is unfamiliar with either First Amendment or APA claims. Because this case "raises questions of federal law, either forum is equally capable of hearing and deciding those questions." *Dealtime.com v. McNulty*, 123 F. Supp. 2d

17

750, 757 (S.D.N.Y. 2000).  The Court is confident that the Western District of New York has the capacity to resolve Plaintiffs' claims.  This factor weighs in favor of transfer.

### 9. Trial efficiency, judicial economy, and the interest of justice

The final factors weigh in favor of transfer.  Trial of Plaintiffs' claims in the jurisdiction where the legal mail policy was implemented will be more efficient than trying it in a venue which has little connection to the case.

The interest of justice will be better served by transferring the case as well.  The Court's "consideration of whether transfer is in the interest of justice is based on the totality of the circumstances, and relates primarily to issues of judicial economy." *Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, 419 F. Supp. 2d 395, 407 (S.D.N.Y. 2005) (internal quotation marks and citation omitted).  Defendants argue that the Western District of New York has a stronger connection to the case.  Reply at 14.  The Court agrees.  As described in detail above, the locus of facts for this action is not in the Southern District of New York.  And "courts consistently recognize that the existence of a related action in the transferee district is a strong factor to be weighed with regard with regard to judicial economy, and may be determinative." *Williams v. New York*, No. 3 Civ. 5342, 2006 WL 399456, at *3 (S.D.N.Y. Feb. 21, 2006) (collecting cases).  Defendants identify a habeas action pending in that district in which the petitioner is represented by two of the Plaintiffs and which "raises issues concerning BFDF's mail policy."  Mem. at 15 (citing *K.K. v. Garland et al.*, No. 6:23-cv-6281 (W.D.N.Y.)).  The existence of that action weighs in favor of transfer.  Therefore, the Court finds that these factors too weigh in favor of transfer.

### IV. CONCLUSION

Weighing the factors as described above, the Court finds that, on these facts, transfer of this action is warranted under § 1404(a).  Defendants' motion to transfer this action to the Western District of New York is therefore GRANTED.  The Clerk of Court is directed to terminate the

18

motion pending at Dkt. No. 30, and to transfer this case to the Western District of New York without delay.

SO ORDERED.

Dated: August 25, 2025

                                                      GREGORY H. WOODS  
                                               United States District Judge