UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



PRISONERS' LEGAL SERVICES OF NEW YORK,
ROBERT F. KENNEDY HUMAN RIGHTS,
NEW YORK CIVIL LIBERTIES UNION,

Plaintiffs,

v.                                                                                        25-cv-787

U.S. DEPARTMENT OF HOMELAND SECURITY,
U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,
KRISTI NOEM, in her official capacity as Secretary,
U.S. Department of Homeland Security,
JOSEPH E. FREDEN,
In his official capacity as Deputy Field Office Director,
Buffalo Federal Detention Facility,
THOMAS BROPHY,
In his official capacity as ICE Enforcement and Removal
Operations Buffalo Field Office Director,

Defendants.

SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into this 5th day of January

2026, by and between plaintiffs Prisoners' Legal Services of New York; Robert F. Kennedy

Human Rights; and the New York Civil Liberties Union (collectively, the "Plaintiffs") and ·

defendants the U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs

Enforcement ("ICE"); Kristi Noem, in her official capacity as Secretary of DHS; Joseph E.

Freden, in his official capacity as Deputy Field Office Director, Buffalo Federal Detention

Facility; and Stephen Kurzdorfer, in his official capacity as Acting Buffalo Field Office Director

for ICE Enforcement and Removal Operations (collectively, the "Defendants" and, together with

1

the Plaintiffs, the "parties") by and through their attorneys.[1]

WHEREAS, on March 10, 2025, Plaintiffs commenced this lawsuit in the United States District Court for the Southern District of New York (Docket 25-cv-1965), seeking declaratory and injunctive relief based on claims arising under the First Amendment rights and the Administrative Procedure Act and pertaining to a legal mail policy allegedly implemented by Defendants at the Buffalo Federal Detention Facility in 2024;

WHEREAS, this lawsuit was transferred to the United States District Court for the Western District of New York on August 25, 2025, and assigned Docket 25-cv-787;

WHEREAS, Defendants denied that the mail policy at the BFDF violated Plaintiffs' First Amendment rights or the Administrative Procedure Act;

WHEREAS, Defendants maintain that the mail policy at the BFDF was implemented to continue to ensure the safety of every detainee housed at the BFDF, as well as all staff employed at the BFDF, and to provide an environment that is free from dangerous drugs and substances that can harm those in the care of the BFDF and those who work there; and

WHEREAS, while there are open legal issues and factual disputes, the parties wish to resolve this action without further litigation and pursuant to the terms and conditions contained herein;

NOW, THEREFORE, IT IS HEREBY AGREED by and between the parties that the following procedures shall be used at the BFDF to process Special Correspondence or Legal Mail sent to or received by individuals detained at the BFDF and the following additional

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Tammy Marich was automatically substituted for Thomas Brophy, who was named as a defendant in the complaint, but is the former Buffalo Field Office Director for ICE Enforcement and Removal Operations.

provisions shall govern this Agreement.

## PROCESSING OF SPECIAL CORRESPONDENCE AND LEGAL MAIL

1.    This Agreement defines "Special Correspondence or Legal Mail" in accordance with the definitions under the ICE Performance-Based National Detention Standards 2011 (rev. 2016) ("PBNDS"), § 5.1(V)(F)(2). Specifically, "Special Correspondence or Legal Mail" is defined in this Agreement as a detainee's written communications to or from any of the following: a. private attorneys and other legal representatives; b. government attorneys; c. judges and courts; d. embassies and consulates; e. the president and vice president of the United States; f. members of Congress; g. the Department of Justice (including the DOJ Office of the Inspector General); h. the Department of Homeland Security (including U.S. Immigration and Customs Enforcement, ICE Health Services Corps, the Office of Enforcement and Removal Operations, the DHS Office for Civil Rights and Civil Liberties, and the DHS Office of the Inspector General); i. outside health care professionals; j. administrators of grievance systems; and k. representatives of the news media. Correspondence shall only be treated as Special Correspondence or Legal Mail if the title and office of the sender (for incoming correspondence) or addressee (for outgoing correspondence) are unambiguously identified on the envelope, and the envelope is labeled "special correspondence" or "legal mail."

2.    As a routine matter, incoming Special Correspondence or Legal Mail shall be distributed to detainees within 24 hours of receipt at the BFDF, and outgoing Special Correspondence or Legal Mail shall be delivered to the postal service no later than the day after it is received by BFDF staff or placed by the detainee in a designated mail depository (excluding weekends and holidays).

3.    The BFDF shall utilize the MailSecur 300, or similar device, to scan all incoming

3

Special Correspondence or Legal Mail at the BFDF. The BFDF shall not open, copy, or retain the envelope or packaging, or the contents thereof, of incoming Special Correspondence or Legal Mail except as set forth below.

4.    If there are more than 25 pages contained within an envelope or packaging containing Special Correspondence or Legal Mail, the BFDF will open the envelope or packaging only in the presence of the detained recipient. The detainee will take the pages contained within the envelope or packaging, separate them into smaller quantities, and place them into manilla envelopes provided by the BFDF to restrict viewing of the pages. In front of the detained recipient, the BFDF will scan the original envelope or packaging and the contents of each manilla envelope until the entire contents of the original envelope or packaging have been scanned. In the event the MailSecur 300 detects no foreign substance, the detained recipient will be provided with the Special Correspondence or Legal Mail and will be allowed to place the Special Correspondence or Legal Mail back into the original envelope or packaging. If the MailSecur 300 detects a foreign substance, the BFDF may photocopy the incoming Special Correspondence or Legal Mail only in the detained recipient's presence, and the detainee will be provided with photocopies.

5.    If there are 25 or fewer pages contained within an envelope or packaging containing Special Correspondence or Legal Mail, the BFDF may open and photocopy the incoming Special Correspondence or Legal Mail in the detained recipient's presence only if the MailSecur 300 detects a foreign substance.

6.    Under this Agreement, as under the PBNDS, § 5.1(V)(I), in the event a foreign substance is detected, the BFDF will make a written record that includes: 1. the detainee's name and A-number; 2. the name of the sender and recipient; 3. a description of the mail in question;

4. a description of the action taken and the reason for it; 5. the disposition of the item and the date of disposition; and 6. the officer's signature.

7. In the event a foreign substance is detected, Special Correspondence or Legal Mail may be confiscated, (in whole or in part) and, if confiscated, then the detainee shall be given a receipt. In the event a foreign substance is detected and Special Correspondence or Legal Mail is retained as contraband, the original documents will be sealed into an envelope and the detainee will write his name across the seal of the envelope. The sealed envelope will be placed into the detainee's property bin. The detainee will remain present during this process, and all scanning, opening, copying and placement into his property will take place in front of the detainee.

8. In the event the MailSecur 300 is unavailable, the BFDF reserves the right, during the MailSecur 300's temporary unavailability, to open and inspect incoming Special Correspondence or Legal Mail in the detained recipient's presence and to make photocopies, also in the detained recipient's presence, if a foreign substance or contraband is detected. Inspection of Special Correspondence or Legal Mail will be limited to detecting physical contraband and confirming that the enclosures qualify as Special Correspondence or Legal Mail. In the event a foreign substance is detected and Special Correspondence or Legal Mail is retained as contraband, the original documents will be sealed into an envelope and the detainee will write his name across the seal of the envelope. The sealed envelope will be placed into the detainee's property bin. The detainee will remain present during this process, and all scanning, opening, copying and placement into the detainee's property will take place in front of the detainee.

9. In the event that a legal representative or legal assistant, provides a detainee with Special Correspondence or Legal Mail during a legal visit, the foregoing inspection procedure

applied to incoming Special Correspondence or Legal Mail shall be applied to such correspondence after the legal visit concludes.

10.    In the event that a legal representative or legal assistant provides a detainee with Special Correspondence or Legal Mail in court, the foregoing inspection procedure applied to incoming Special Correspondence or Legal Mail shall be applied to such correspondence after the court appearance concludes.

11.    The BFDF shall under no circumstances read Special Correspondence or Legal Mail, or take opened Special Correspondence or Legal Mail outside of the presence of its recipient except as described above.

## ADDITIONAL PROVISIONS

12.    This Agreement shall not constitute an admission of liability or fault on the part of Defendants, their agents, servants, or employees, and is entered into for the purpose of compromising disputed claims and avoiding the expenses and risks of litigation.

13.    The parties shall each bear their own costs, fees, and expenses.

14.    This Agreement, including all the terms and conditions of compromise and any additional agreements relating thereto, may be made public in its entirety, and the Plaintiffs expressly consent to such release and disclosure pursuant to 5 U.S.C. § 552a(b).

15.    The above provisions for processing Special Correspondence or Legal Mail shall be implemented at the BFDF within 10 calendar days following the date that the Court approves and enters this Stipulation and Order on the docket (the "Implementation Date").

16.    The parties will work together to identify issues or problems arising from implementation of this Agreement, and work proactively to address those issues and problems.

17.    This Agreement is in effect for a period of three years following the date that the

6

Court approves and enters the Stipulation and Order on the docket. This Agreement will expire and terminate without further action by the parties at the end of this three-year period, except that the parties will sign and submit a joint stipulation of dismissal with prejudice as specified in paragraph 31 below.

18.    The Court will retain jurisdiction to enforce this Agreement, and address any alleged violations thereof, for the three-year period specified in paragraph 17 above, subject to the below provisions.

19.    If the Plaintiffs have a reasonable basis to believe that the Defendants are failing to comply with any material provision of this Agreement, Plaintiffs will notify Defendants in writing of the specific issues, including date and time of occurrence and the name of the detainee involved. This notice will identify, with particularity, the basis of their noncompliance claim and the specific provisions of the Agreement that are implicated.

20.    Within two weeks of receipt of notification, Defendants will provide a written response to the Plaintiffs' notification with an explanation as to why Defendants believe they are complying with the Agreement, or an explanation of the Defendants' plans to achieve full compliance with the Agreement.

21.    If the Parties are unable to resolve the dispute, Plaintiffs may seek intervention from this Court.   Unless exigent circumstances exist or the Court directs otherwise, Plaintiffs shall notify the Court in writing of the dispute and request a status conference before filing a motion or request for other relief.

22.    Any notices under this Agreement will be sent by overnight mail and email to the following addresses unless a different address has been designated by notice to the parties:

For the Plaintiffs:

Tyler Jankauskas
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018-1618

Amy Louise Belsher
New York Civil Liberties Union Foundation
125 Broad Street, 19th Floor
New York, NY 10004

tjankauskas@cov.com
jjoachim@cov.com
abelsher@nyclu.org
kbattenfeld@plsny.org
jnowak@plsny.org
decker@rfkhumanrights.org
gillman@rfkhumanrights.org

For the Defendants:

Daniel B. Moar
U.S. Attorney's Office for the Western District of New York
138 Delaware Avenue
Buffalo, NY 14202

Adam A. Khalil
U.S. Attorney's Office for the Western District of New York
100 State Street, Suite 500
Rochester, NY 14614

daniel.moar@usdoj.gov
adam.khalil@usdoj.gov
USANYW-Immigration-Habeas@usdoj.gov

23.     The Parties agree that individuals who are or will be detained at the Buffalo Federal Detention Facility are intended third-party beneficiaries of this Stipulation and Order. Accordingly, as to those individuals, Plaintiffs, or counsel for Plaintiffs, may move this Court to enforce the terms of this Stipulation and Order. The Defendants expressly waive any argument that the Plaintiff or counsel for the Plaintiff lack standing or capacity to seek to enforce the terms of this Stipulation and Order.

8

24. This Agreement contains the entire agreement between the parties with respect to the matters at issue in this litigation, and there are no written or oral understandings or agreements that are not incorporated herein.

25. In any proceeding brought to enforce the terms of this Stipulation and Order where Plaintiffs substantially prevail, they may seek to recover the fees, costs, and expenses incurred in litigating the matter pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 et seq.

26. If the Court finds that Defendants are out of compliance with the Stipulation and Order, Plaintiffs can move for additional relief from the Court, to include an extension of the length of the term of the Agreement.

27. This Agreement is binding upon and inures to the benefit of the successors and assigns of the parties throughout the duration of the Agreement.

28. The parties may agree to a modification of this Agreement in a writing signed by all parties. If the parties are unable to agree to a modification, the party requesting the modification may apply to the Court to approve the modification.

29. All parties have cooperated and participated in the drafting of the Agreement, and in any construction made of this Agreement, all parties shall be deemed to have cooperated and participated in the drafting and preparation of this Agreement.

30. If any provision or term of this agreement is held to be invalid, illegal, unenforceable or in conflict with the law, the validity and legality of the remaining provisions will not be affected or impaired.

31. The parties agree that within 20 calendar days of the entry of this Agreement, they will sign and submit a joint stipulation of dismissal without prejudice pursuant to Fed. R. Civ. P.

41(a). The parties agree that the Court will maintain jurisdiction throughout the duration of this Agreement pursuant to the paragraphs above. After the expiration of the three-year term of this agreement as set forth in the paragraphs above, the parties will sign and submit a joint stipulation of dismissal with prejudice.

**IN WITNESS WHEREOF**, the parties have executed this Agreement, which may be executed in counterparts and the undersigned represent that they are authorized to execute and deliver this Agreement on behalf of the parties.

For the Plaintiffs:

Tyler Jankauskas
Covington & Burling LLP
620 Eighth Avenue
New York, NY 10018-1618

For the Defendants:

Daniel B. Moar
U.S. Attorney's Office for the Western District of New York
138 Delaware Avenue
Buffalo, NY 14202

SO ORDERED

Hon. Lawrence J. Vilardo

1-6-26

10